# WILLIAM E. BURR *et al.*

*v.*

# ADOLPH C. MUELLER *et al.*

1. PURCHASER—*whether purchaser of an undivided interest in land may purchase under incumbrance given by his grantor.* Where A purchased a tract of land, giving a deed of trust to secure the deferred payments, and then conveyed the undivided half of the land to B, and afterwards gave a mortgage on his undivided half to the infant heirs of C, and B, after this, purchased the entire premises at the trustee's sale under the deed of trust, when the heirs of C filed their bill to foreclose their mortgage, alleging that the purchase by A in the first instance was for the joint benefit of himself and B, and therefore B was bound to pay one-half of the incumbrance under which he acquired the whole title: *Held,* that the conveyance by A to B, in the absence of proof that it was made in pursuance of some original agreement, or under the relation of partners or principal and agent, would be presumed to have been a sale or a gift, and that it would be presumed to have been a sale rather than a gift; and that the fact of such conveyance, standing alone, could not be made the basis of a liability on the part of B to pay A's individual notes for the purchase money.

4. TENANTS IN COMMON—*right of one tenant in common to purchase his co-tenant's estate under a prior incumbrance given by the latter.* Where A,

the owner of land, after giving a deed of trust thereon, conveyed the undivided half thereof to B: *Held*, that, as the interests of A and B, as tenants in common, did not accrue under the same instrument, act of the parties or by operation of law, in the absence of any engagement or understanding with one another, they did not stand in such confidential relations in regard to each other's interests that B would not be permitted in equity to purchase the estate of A at a sale under a power in A's trust deed.

3. SAME—*may deal with each other.* It is the general doctrine that tenants in common are separately seized, and there is no privity of estate between them. They may enfeoff or convey to each other the same as if they dealt with a stranger.

4. SAME—*who may take advantage of purchase made by one tenant in common of an outstanding incumbrance.* Where one tenant in common acquires title under an outstanding incumbrance which each is equally bound to discharge, the purchase will not be void, but the other tenant, in equity, will have the right to elect within a reasonable time thereafter to avail himself of the purchase by offering to contribute his due proportion of the sum expended in the purchase; and this right of option is personal, and does not attach to the estate, so that a mortgagee of such tenant in common can not exercise the same.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. MOORE & CAULFIELD, for the appellants.

Messrs. ROSENTHAL & PENCE, and Mr. SIDNEY SMITH, for the appellees.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This is a bill to foreclose a mortgage under somewhat peculiar circumstances. The court below sustained a demurrer to the bill, and no amendment being proposed it was dismissed. The plaintiffs bring the record to this court by appeal.

It appears that William H. Brand, December 26, 1856, purchased and took a conveyance of the premises in question from one Keestling, giving to the latter, for the deferred payments of the purchase money, his three promissory notes of that date, payable to the order of Keestling in one, two and

260 BURR *et al. v.* MUELLER *et al.* [Sept. T.,

Opinion of the Court.

three years, respectively, after date, for the sum of $2968.50 each, with interest, and to secure which he, at the same time, executed a trust deed covering the premises purchased, to one Mueller, as trustee, with a power of sale in case of default in payment of any part of the sums secured.

The bill also alleges that, after the execution of the notes and deed of trust, Brand conveyed an undivided half of the premises to one William A. Dudley; afterwards, on the 27th of June, 1859, Brand mortgaged his undivided half to mortgagees described as "the infant heirs of W. M. Brand, deceased," to secure an individual indebtedness to them.

It further appears by the bill, that, default having been made in the payment of the notes to Keestling, the premises were sold on the 23d of July, 1862, by Mueller, the trustee, under the power of sale; were purchased by and conveyed to Dudley, the co-tenant of Brand.

And it is alleged that the premises were, in the first instance, purchased and held by said Brand, in his name, but for the joint benefit of himself and said Dudley; that the latter was justly and legally bound to pay the one half of said notes so held by Keestling; that at the time of the sale by the trustee, it was Dudley's duty to have paid the notes, and not permitted the sale of the premises; that he and Brand each owed the whole of said notes, and the purchase at the trustee's sale was, in fact, made for and on the joint account of himself and said Brand; that such purchase could only result as a purchase by both; and the deed from Brand to Dudley of an undivided half was on record, showing that the premises were the joint property of the two. The bill also shows that Dudley and Brand were both dead, the latter dying the 14th of October, 1866.

This bill was filed June 15, 1872, by appellants, claiming as mortgagees under the mortgage made by William H. Brand to the infant heirs of W. M. Brand, deceased, June 27, 1859, for the purpose of having the lien of that mortgage declared paramount to any title acquired under the trustee's sale, even

as against purchasers from or under Dudley, and to have a decree of foreclosure and sale to pay appellants' debt.

No fraud.or irregularity in the trustee's sale is alleged.

The bill shows no relation such as partner existing between Brand and Dudley; nor does it profess to state that Brand purchased of Keestling, for the joint benefit of both, under any agreement between them to that effect, or that it was done with Dudley's authority, or without his authority, and subsequently ratified by him.

There is no allegation of any express agreement on Dudley's part to become responsible for the notes jointly with Brand, or otherwise; nor circumstances stated with sufficient certainty from which such an agreement can be implied.

It is alleged that the conveyance of an undivided half was made to Dudley after the execution of the trust deed by Brand to Mueller. No other time or circumstance is stated except the mere fact that the deed to Dudley was recorded, but when that was does not appear. That conveyance, in the absence of other circumstances or allegation showing that it was made in pursuance of some original agreement, or under the relation of partners, or principal and agent, will be presumed to have been a sale or a gift, and the law will presume it to have been the former rather than the latter; but the fact, standing alone as it does, can not be made the basis of a liability on the part of Dudley to pay Brand's individual notes to Keestling.

This case, therefore, is devoid of all special circumstances, imposing a duty to be performed by Dudley inconsistent with his character as purchaser at the trustee's sale. Then the real question is, did such a duty arise from the relation alone of tenant in common? Under the circumstances here disclosed, we think not. The interests of Brand and Dudley, as tenants in common, did not occur under the same instrument, act of the parties or of the law.

In the absence of any engagement or understanding with one another, they did not stand in such confidential relations

in regard to each other's interest, that one of them would not be permitted in equity to purchase the estate of the other at a sale under a power which the latter had given to an agent.

It is the general doctrine that tenants in common are separately seized, and there is no privity of estate between them; they may enfeoff or convey to each other the same as if they dealt with a stranger. 4 Kent's Com. 369.

If Dudley had purchased and taken a conveyance directly from Brand of his interest, would counsel contend that the transaction was forbidden, by the rule of public policy upon which courts of equity act in regarding with jealousy the dealings between persons who stand in confidential relations towards each other? We think not. Then, if it was not the duty of Dudley to pay Brand's notes to Keestling, or such duty is not shown by the bill, what difference can there be, in principle, between a purchase made directly with Brand in person, and one accomplished through his constituted agent in in the mode authorized? We confess ourselves wholly unable to perceive any difference whatever, and are of the opinion that, upon principle and authority, Dudley had the right, under the circumstances of this case, to purchase his co-tenant's interest at the trustee's sale. *Hinkley* v. *Green*, 52 Ill. 230; *Britten* v. *Handy*, 20 Ark. 381; *Baird* v. *Baird*, 1 Dev. & Batt. Eq. 524.

Dudley did not purchase an outstanding title or incumbrance adverse to or affecting the common title of his co-tenant and himself, but he purchased the several estate of his co-tenant under a power and in the mode in which such co-tenant authorized the same to be sold in case he failed to pay the notes he had given for purchase money.

This case is entirely distinguishable from that of *Van Horne* v. *Fonda*, 5 Johns. Ch. R. 388, and all those of that class.

But even conceding that this case falls within the principle of *Van Horne* v. *Fonda*, *supra*, still, the purchase by Dudley was not void. It simply gave rise to an equity in Brand's favor to elect within a reasonable time to avail himself of the

benefit of the purchase by offering to contribute his due proportion of the sum expended in the purchase. This was a personal option, and not a right attaching to the estate.

The bill is wholly silent in respect to any attempt to exercise this right of election on the part of Brand, or his heirs.

The sale occurred in July, 1862. This bill was filed in June, 1872, by the mortgagees in a junior mortgage upon Brand's several estate. There is no principle, of which we are aware, upon which such mortgagees can exercise an option given by equity to their mortgagor personally, of which neither he nor his heirs ever availed themselves.

The decree of the court below must be affirmed.

*Decree affirmed.*