JOHN P. MURRAY AND ANOTHER v. WILLIAM MURRAY
AND OTHERS.[1]

April 11, 1924.

No. 23,910.

**Judgment sustained by proof of service in accord with statute.**
1. It is the fact of service that gives jurisdiction. If service is made, and jurisdiction acquired, a return showing defective service does not divest it. The evidence offered at the trial supports a finding that service was made by leaving at the house of the usual abode of the person served with a person of suitable age and discretion then resident therein, as required by the statute, and the judgment rendered on such service is valid.

**Cotenant may buy at execution sale interest of his cotenant.**
2. A cotenant is not prevented, by the fact of his cotenancy, from buying at an execution sale on a judgment which is a lien only on the undivided interest of his cotenant. The relation of trust or confidence between cotenants, arises from their community of ownership. It affects their right to buy an interest paramount to the common title, but not their right to buy an interest adverse only to an undivided interest of a cotenant.

**Evidence insufficient to show that debt was due from all cotenants.**
3. The evidence was not such as to sustain a finding that the debt on which a judgment was entered followed by an execution sale was the debt of all the cotenants; or that the situation was such that it should have been paid out of the property owned in common so that one cotenant could not purchase at the execution sale and assert a paramount title.

Action in the district court for Le Sueur county for partition of land. The case was tried before Tifft, J., who made findings as specified in the first paragraph of the opinion and ordered judgment in favor of plaintiffs. Plaintiffs' motion for additional findings

[1]Reported in 198 N. W. 307.

and conclusions was denied. From an order denying their motion for a new trial, plaintiffs appealed. Affirmed.

*Moonan & Moonan*, for appellants.

*W. C. & W. F. Odell*, for respondents.

DIBELL, J.

Action for the partition of land. The court found that each of the plaintiffs owned an undivided 1/84 of the land involved, and that the defendant William Murray owned the remaining undivided 82/84. The 1/84 of each of the plaintiffs came by descent from their grandmother who inherited 1/7 upon the death of a sister of their father. There is no question of the finding that each of the plaintiffs has an undivided 1/84. They claim that in addition to the 2/84 they own an undivided 1/7. The court found against them. The controversy is over this 1/7. They appeal from the order denying their motion for a new trial.

The land was owned by Patrick Murray who died in 1869, leaving a widow, who under the law as it then was took a dower interest, that is, a life estate in one-third. She died in 1898. The remainder was vested by the decree of the probate court in 7 children. One of the children, John Murray, died in 1889, owning the 1/7 inherited from his father, leaving a widow who died in 1917, and the plaintiffs, his two children. There were no other heirs. A money judgment was docketed against him in 1887. An execution sale purporting to cover the 1/7 was had in 1897 upon this judgment. Two of the defendants, who were cotenants, purchased, and what was acquired the defendants William Murray and Patrick H. Murray now own.

The plaintiffs claim:

(1) That the judgment was void for want of jurisdiction because of a lack of service of process, and that therefore no title was acquired by the execution sale.

(2) That the cotenants purchasing at the sale could not, because of their community of interest or fiduciary relationship, acquire a paramount title to the one-seventh at the execution sale.

(3) That the debt for which the judgment was rendered against John Murray was the debt of all the Murray heirs; that it was contracted in aid of the operation of the farm which is now being partitioned; that it should have been paid out of the proceeds of the farm; and that none of the cotenants could acquire a paramount title through the execution sale.

1. The return of the officer is that he served the "summons and complaint upon John Murray, the other defendant therein, by handing to and leaving with William Murray, brother of the said defendant, true copies of the said summons and complaint at the residence of said John Murray, defendant, and the said William Murray being a person of suitable age and discretion also resident therein." Service at that time should have been made upon a defendant by leaving a copy of the summons at the house of his usual abode with some person of suitable age and discretion then resident therein. G. S. 1878, c. 66 § 59. The statute with the change of a few words is the same now. G. S. 1913, § 7732.

The absence of proof of service from the record does not show want of jurisdiction subjecting the judgment to collateral attack; but when the return of the officer is in the record no service other than that to which he certifies is presumed. It is the fact of service which gives jurisdiction and the filing of proof, which does not show service, does not divest it. These principles were recently discussed with a collection of pertinent authorities in Leland v. Heiberg, 156 Minn. 30, 194 N. W. 93, and they do not call for further discussion now. Let it be conceded that the facts recited in the return do not show service; still the judgment is not invalid if at the trial it was proved in support of the judgment that service was made. There is evidence that the summons was left by the officer at the house where John Murray lived, with William Murray. The evidence justified a finding, which is necessarily included in the holding of the court that the judgment is valid, that a copy of the summons was left at the house of John Murray's usual abode with a person of competent age and discretion then resident therein. Upon the question of what constitutes the house of usual abode reference may be had to Berryhill v. Sepp, 106 Minn.

458, 119 N. W. 404, 21 L. R. A. (N. S.) 344, and Lovin v. Hicks, 116 Minn. 179, 133 N. W. 575. In addition the proof shows that the summons was given to John Murray the day after it was left with William Murray. The judgment is valid.

2. The confidential or trust relationship between the cotenants, arising from their community of interest did not preclude any of them from purchasing the undivided interest of another upon an execution sale affecting such interest only. Such relationship only prevents the purchase of an interest hostile to the common title. In Oliver v. Hedderly, 32 Minn. 455, 21 N. W. 478, we adopted the general rule that one cotenant cannot assert for his own benefit title to the common property through a purchase of a paramount interest. Here title to the common property is not asserted by one cotenant against the others. The judgment and execution sale did not affect the common title. No cotenant was forbidden, because of his cotenancy, from buying and asserting title to the undivided interest upon which alone the judgment rested. Peck v. Lockridge, 97 Mo. 549, 11 S. W. 246; Burr v. Mueller, 65 Ill. 258; McNutt v. Nuevo Land Co. 167 Cal. 459, 140 Pac. 6; McCready v. Fredericksen, 41 Utah, 388, 126 Pac. 316; Elston v. Piggott, 94 Ind. 14; Brittin v. Handy, 20 Ark. 381, 73 Am. Dec. 497; 2 Jones, Real Prop. Conv. § 1838; 1 Tiffany, Real Prop. 696; Freeman, Cotenancy, § 165; 17 Am. & Eng. Enc. (2d ed.) 676.

3. The judgment was entered and docketed on April 23, 1887. It was based on a promissory note dated August 9, 1879. The execution sale was on April 22, 1897. The plaintiffs' claim is that the debt, which arose a number of years prior to the note, was for a horse bought for use on the farm for the common benefit of the widow and her children; that it was contracted in aid of the operation of the farm; that it was as much the debt of the other children as of John who signed the note with his mother; that it should have been paid out of the profits of the farm; and that the cotenants, therefore, could not acquire title to John Murray's interest through the execution sale. The general finding of the court is in favor of the defendants. The court refused a specific finding. The effort to prove the facts claimed involved an investigation

running back 40 years and more upon a matter of no striking interest. Those who can tell of it now were many of them then very young. The testimony is uncertain. A finding of the facts, as the plaintiffs claimed them to be, would not be justified. Granting the law to be as they claim, they do not have the facts which make it applicable.

Upon the death of John Murray in 1889 his 1/7 descended 1/3 in fee to his widow and 2/3 in fee to his two children, the plaintiffs. The 2/3 was subject to the 1887 judgment and was divested by the 1897 execution sale. The 1/3 vesting in the wife was not affected by the judgment or the execution sale as the law then was. Upon her death in 1917, if she then had it, it descended to the plaintiffs. There is mentioned in the testimony a probate decree in the estate of John Murray. It is not before us. Its effect, if any, upon this litigation we do not know. At the trial attention was centered on the 1/7, as if taken by the plaintiffs as sole heirs of their father, and as if altogether divested by a valid execution sale on the 1887 judgment. That the mother took 1/3 of the 1/7 unaffected by the judgment and execution sale, and that if it was in her at her death in 1917 the plaintiffs then took it as her heirs, apparently was not urged.

If there has been a failure to recognize the interest which passed to the widow, and the right of the plaintiffs to it as her heirs, it should be corrected, if at all, in the trial court. We cannot correct it here, with the record as we have it, nor should there be a new trial of all the issues. Upon the going down of the remittitur, the plaintiffs, if their claim is that proper disposition of the 1/3 of the 1/7 was not directed by the findings, may take such proceedings as they are advised are proper, but they may go no further. Except as to this interest the litigation is at an end.

Order affirmed.