SHARPLES CORPORATION, a Delaware Corporation,

*Plaintiff and Appellant,*

vs.

SINCLAIR WYOMING OIL COMPANY, a Delaware Corporation,

*Defendant and Respondent.*

(No. 2332; March 19th, 1946; 167 Pac. (2d) 29)

342

For the Plaintiff and Appellant, the cause was submitted on the brief of Dines, Dines & Holme, Harold D. Roberts and Robert E. More, all of Denver, Colorado. John W. Turner of Eastland, Texas, and John U. Loomis of Cheyenne, Wyoming, and oral argument by Mr. Roberts.

For the Defendant and Respondent the cause was submitted on the brief of Brock, Okolt, Campbell and Myer, all of Denver, Colorado, and Ray E. Lee of Cheyenne, Wyoming, and oral argument by Mr. Lee and Mr. John P. Akolt.

OPINION

BLUME, Chief Justice.

This is an action involving the so-called Howell and Rigdon 1/15th interest in the oil and gas in the North Half of the Southeast Quarter of Sec. 3, Township 26 North, Range 90 West of the 6th Principal Meridian, in Sweetwater County, Wyoming, and located in the so-called Lost Soldier Field. The interest was acquired by Drayton Oil and Drilling Company in August, 1942, and was by it conveyed to the Sinclair Wyoming Oil Company, defendant herein. Sharples Corporation, the plaintiff herein, claims that it is entitled to participate in the benefits of the purchase of the Howell and Rigdon interest under the doctrine that one co-tenant may not acquire and assert against another co-tenant an adverse title of a third party. The trial court refused to grant the plaintiff any relief and it has appealed to this Court.

The salient facts herein are substantially undisputed. The title to the lands involved herein starts, according to the agreement of the parties herein, with the Good Oil Company. That company, together with the Sweetwater Oil Company and the Wertz-Dome Oil Company (the latter two companies owning other lands) gave a lease on March 23, 1923, to the Texas Production Company for the purpose of developing the land for oil and gas. On October 17, 1924, the same parties granted to D. J. Howell and C. L. Rigdon a 1/15th interest in any and all amounts which might become due and payable under the contract with the Texas Production Company in so far as it appertained to the land involved in this controversy. On October 31, 1924, the Good Oil Company reciting that it had granted to Howell and

Rigdon a 1/15 interest as above mentioned, conveyed all its other interests to the Sweetwater Oil Company. On December 31, 1927, the Texas Production Company, evidently considering the lease given it of no value, released all of its interests to the Sweetwater Oil Company. On July 28, 1931, B. F. Drayton claimed and filed a lien against the property for the sum of about $10,000.00. This claim was assigned to the Drayton Oil and Drilling Company, and a sheriff's deed was executed to the latter company on December 31, 1932, purporting to convey the interests of the Sweetwater Oil Company. It seems that one D. R. Higby and H. L. Nutting claimed an interest in the same property, and they conveyed whatever interest they had to the Drayton Oil and Drilling Company. In the meantime oil was produced from the upper sands and was sold to the defendant herein, the Sinclair Wyoming Oil Company, but inasmuch as the title to the property was in dispute it did not at that time distribute the proceeds from the sale of the oil. On November 27, 1937, the Drayton Oil and Drilling Company and the Sweetwater Oil Company entered into an agreement to convey all of their interests to C. A. Brimmer, trustee, and agreeing that he in turn should convey to the Sweetwater Oil Company an undivided one-half interest in and to all the oil and gas and other minerals which might be produced from the oil and gas bearing sands lying below the Dakota and Lakota sands, and to convey to the Drayton Oil and Drilling Company all of the remainder of the interests. Deeds to this effect were executed by the respective parties to C. A. Brimmer, trustee, and the latter in turn, on July 7, 1938, executed quitclaim deeds to the respective parties in accordance with their agreement. On March 21, 1940, D. J. Howell and Etta M. Rigdon, (assignee of C. L. Rigdon) brought a suit in the District Court of Sweetwater County against the Drayton Oil and Drilling Company and the Sweetwater

Oil Company, asking the Court to declare that they had an undivided 1/15th interest in and to all of the oil and gas produced in and from the lands involved in this case. Issues were duly joined in the case by both defendants, and on November 28, 1941, the District Court of Sweetwater County entered a judgment in favor of Howell and Rigdon, the judgment containing the following provisions:

"2. That under and by virtue of the contract between D. J. Howell and C. L. Rigdon, on the one part, and the Good Oil Company, the Sweetwater Oil Company and the Wertz-Dome Oil Company, each organized under a declaration of trust, on the other part, the plaintiff, D. J. Howell, and C. L. Rigdon, the assignor of the plaintiff, Etta M. Rigdon, acquired an interest in all oil and gas or either produced from the North half of the Southeast quarter of Section 3, Township 26 North, Range 90 West of the 6th Principal Meridian, in the County of Sweetwater and State of Wyoming, and that said interest is a continuing interest and is still in full force and effect.

"3. That the interest acquired by the plaintiffs in the property described is a definite and specific interest in all oil and gas, or either, produced from said land, and said interest runs with said land and is binding upon the said Good Oil Company, Sweetwater Oil Company and Wertz-Dome Oil Company and their, and each of their, successors and assigns, and such interest is binding upon and enforceable against the defendants Sweetwater Oil Company of Colorado, a corporation, formerly Sweetwater Oil Company, a Colorado corporation, and Dayton Oil and Drilling Company, a corporation, and their, and each of their, successors and assigns.

"4. That the said plaintiffs and their, and each of their, successors and assigns are entitled to enforce their rights under said contract as against the said defendants and their, and each of their successors and assigns.

"5. That the said contract between the plaintiff, D. J. Howell, and C. L. Rigdon, assignor of the plaintiff,

Etta M. Rigdon, and the Sweetwater Oil Company, the Good Oil Company and the Wertz-Dome Oil Company above mentioned was filed for record and recorded in the office of the County Clerk and Ex-Officio Register of Deeds of Sweetwater County, Wyoming, on March 17, 1925, and appears of record in Book 107, pages 73 to 78 of the records in the office of said County Clerk of Sweetwater County, Wyoming, and that by reason thereof the said defendants were and are chargeable with full knowledge and notice of said contract and of the rights of plaintiffs thereunder from the date of the recording of such contract.

"6.   That the interest of said plaintiffs in the oil and gas, or either, produced from the land above described is 1/15th of the interest of the Sweetwater Oil Company, Good Oil Company and Wertz-Dome Oil Company in said property as fixed and measured by the terms of the contract between said companies and the Texas Production Company, a corporation, of Colorado, as said contract is set forth and made a part of the contract between said D. J. Howell and C. L. Rigdon and said Good Oil Company, Sweetwater Oil Company and Wertz-Dome Oil Company and as said contract appears of record in Book 107 at pages 73 to 78 thereof in the records in the office of the County Clerk of said Sweetwater County, Wyoming, and which said contract with the Texas Production Company is a part and parcel of said contract between D. J. Howell and C. L. Rigdon, on one part, and said Sweetwater Oil Company, Good Oil Company and Wertz-Dome Oil Company, on the other part ,and the rights and interest of said plaintiffs in the premises above described should be fixed by the decree of this court to be as herein set forth".

"WHEREUPON, IT IS CONSIDERED, ORDERED AND DECREED that the plaintiffs, D. J. Howell and Etta M. Rigdon, as assignee of C. L. Rigdon, now deceased, and their, and each of their, heirs, executors, administrators and assigns, are the owners of and have a permanent interest in and are entitled to have and receive an undivided 1/15th interest in all minerals and mineral rights, including oil and gas, or either, discovered and produced from the North Half of the Southeast quarter of Section 3, Township 26 North,

Range 90 West of the 6th Principal Meridian, situate in Sweetwater County, Wyoming, as said 1/15th interest is limited and defined by that certain contract dated October 17, 1924, and made and entered into by and between the Good Oil Company, the Sweetwater Oil Company, and the Wertz-Dome Oil Company, each organized under a declaration of trust, parties of the first part, and D. J. Howell and C. L. Rigdon, parties of the second part, as said contract appears of record in Book 107 at pages 73 to 78 of the records of Sweetwater County, Wyoming, in the office of the County Clerk and Ex-Officio Register of Deeds of said county, and such rights have existed in the said plaintiffs and the predecessors in interest of said plaintiff, Etta M. Rigdon, since the making of said contract, and said rights have run with the above described land.

"IT IS FURTHER CONSIDERED, ORDERED AND DECREED that the title and interest of the plaintiffs herein are hereby established and fixed as defined by said contract, and that the said plaintiffs are entitled to have and receive from the said defendants and from any and all persons claiming by, through or under them the aforesaid share and interest in all oil and gas, or either, produced from said land, and that the said plaintiffs may enforce their rights in and to any oil and gas, or either, now being produced from said land or which has heretofore been produced therefrom or which may hereafter be produced therefrom, in any manner provided by the laws of this state and to the full extent permitted by the laws of this state if the said defendants and their, or either or any of their, successors or assigns fail, neglect or refuse to account to and pay over to said plaintiffs their interest in any and all oil and gas, or either, produced from said land hereinbefore described."

In the meantime, on June 7, 1941, while the above mentioned suit was pending, the Sweetwater Oil Company entered into an agreement with George E. Brimmer for its right, title, and interest in and to the property owned or claimed by it as above mentioned, and on the same date executed a deed to him conveying this right. This deed, however, was not recorded until March 10, 1943. Subsequent to June 7, 1941, supplemental

agreements were executed by the Sweetwater Oil Company and George E. Brimmer, the terms of which are not material herein. On or about December 9, 1942, George E. Brimmer in turn entered into an agreement with the Sharples Corporation, plaintiff herein, to grant to the latter all of his rights and on January 19, 1943, executed a quitclaim deed to the plaintiff therefor. Thereby the Sharples Corporation acquired all of the former interests of the Sweetwater Oil Company in and to the property above mentioned.

An appeal was taken from the Howell and Rigdon suit above mentioned to this court jointly by the Sweetwater Oil Company and the Drayton Oil and Drilling Company. In the meantime, Mr. Lee, acting on behalf of Howell and Rigdon, entered into negotiations for the purpose of selling all of their interests in and to the land herein involved. The Sweetwater Oil Company did not appear to be interested, but on August 27, 1942, these interests were conveyed to the Drayton Oil and Drilling Company for the sum of $10,000.00, and on September 12, 1942, the Drayton Oil and Drilling Company in turn conveyed all of its interests, including the interest of Howell and Rigdon, to the Sinclair Wyoming Oil Company, defendant herein. The consideration paid to the Drayton Oil and Drilling Company was the sum of $50,000.00, to be paid in cash in various installments, and the sum of $75,000.00 out of the oil produced from the land. In addition to that, the Drayton Oil and Drilling Company retained a three percent royalty in and to the land. In 1939 the Sinclair Wyoming Oil Company distributed the money accumulated on account of the proceeds from the sale of oil to the interested parties, except the amount accruing on account of the interest claimed by Howell and Rigdon, which in the fall of 1942 amounted to approximately $15,000.00. The Drayton Oil and Drilling Company directed the Sinclair Wyoming Oil Company to

pay the $10,000.00 purchase price above mentioned out of the fund so accumulated, which was accordingly done. Subsequently about November 16, 1942, the Sweetwater Oil Company quitclaimed all of its interest to the Sinclair Wyoming Oil Company, subject to the rights of George E. Brimmer as hereinbefore mentioned. Thereupon, about December 1, 1942, the Sinclair Wyoming Oil Company filed a motion in this court for the dismissal of the appeal of the Howell and Rigdon suit. The appeal was not dismissed until March 2, 1943. The interested parties received notice of the pendency of the motion to dismiss, and John Turner, counsel for the Sharples Corporation, plaintiff herein, came to Cheyenne in January, 1943, to determine whether or not to intervene in the matter, but concluded not to do so because he considered it doubtful that the judgment in the District Court in that suit would be reversed.

After the Sharples Corporation acquired it interests from George E. Brimmer it made demand upon the defendant herein to participate in the purchase of the Howell and Rigdon interest, but the defendant refused, so on October 9, 1943, it commenced this action in the District Court of Sweetwater County to compel the defendant to permit it to participate in that purchase in so far as the lower sands in the land involved are concerned. Some other facts will be mentioned hereafter.

Before discussing the main questions involved here-in we shall consider some points which seem to be of minor importance herein.

I.

Counsel for plaintiff in several places of their brief disclaim any attack on the validity of the judgment rendered by the District Court in the Howell and Rig-

don suit heretofore mentioned. In other places they seem to want to throw a doubt upon the validity of that judgment so far as plaintiff is concerned. In order to clarify that point it may be well to call attention to the provisions of Sec. 89-825, Rev. Statutes of 1931, which provides that "When the summons has been served, or publication made, the action is pending, so as to charge third persons with notice of its pendency; and while pending, no interest can be acquired by third persons in the subject matter thereof, as against the plaintiff's title". In 34 C. J. 1009-1012 it is stated that persons in privity with parties to the suit are bound by the judgment the same as the parties thereto, and that persons in privity are those "whose succession to the rights of property thereby adjudicated or affected were derived through or under one or other of the parties to the action, and accrued subsequent to the commencement of that suit". So, at least for the purposes of this opinion, we shall assume that the judgment in the Howell and Rigdon suit is binding upon the plaintiff herein, although, of course, as correctly stated by counsel for the plaintiff, it does not affect the interest of the defendants in that suit inter se.

Counsel for plaintiff also throw doubt on the extent of the interest adjudicated in the Howell and Rigdon case on account of the statement in the judgment that the interest is "as fixed and measured by the terms of the contract between said companies and the Texas Production Company". It is certain that the court gave to Howell and Rigdon a permanent interest in the oil and gas in and under the land in controversy, whether theretofore produced therefrom or thereafter to be produced, and that interest was fixed as of October 17, 1924, so that their relation to the other owners of or in the land was fixed as of that date. Whether or not the 1/15th interest is somewhat limited is not in question in this case, for the reason that the plaintiff is at-

tempting to participate in the purchase of the Howell and Rigdon interest, whatever that interest may be.

II.

The plaintiff in this case charges the defendant with furtive and surreptitious, if not fraudulent conduct. The trial court evidently ruled against the plaintiff in these matters, and there is nothing in the record that would justify us in holding that the court erred in its holding in that connection. In order that it may not be thought that we have not examined these matters we shall mention them briefly, though we doubt that they have any particular bearing in this case. The plaintiff states in its brief in this court: "Sinclair's final act was surreptitious (we again use this word) to dismiss the appeal", referring to the appeal of the Howell and Rigdon case to this court. So far as the record before us indicates there seems to be no justification for this charge. Defendant filed a motion in this court to dismiss the appeal. Notice of the motion was given to opposing counsel of record who represented the interests in the land involved which were a matter of record. We are not certain that more than that was required of the defendant in order to be fair to the other parties interested. Presumably, the Sweetwater Oil Company would convey notice to its successor in interest. As a matter of fact, when the plaintiff bought the interest formerly held by the Sweetwater Oil Company its counsel came to Cheyenne to investigate the matter and determined that he would not intervene. Had he done so the appeal probably would not have been dismissed so that the ultimate dismissal thereof was due at least as much to plaintiff as to defendant.

Plaintiff charges the defendant with undue pressure and influence in acquiring the Drayton Oil and Drilling Company interests and the Howell and Rigdon interest. We presume that this charge is made upon the

theory that defendant caused the Drayton Oil and Drilling Company to violate its relation of trust and confidence—if any existed—with the Sweetwater Oil Company; otherwise the matter would seem to be immaterial; and it would in any event seem to be immaterial, if no relation of trust and confidence was violated. We fail to find that the Drayton Oil and Drilling Company was under any compulsion by reason of any acts of the defendant. So far as the record shows that company acted entirely voluntarily. And if that is correct the fact upon which stress is laid by plaintiff, that the defendant did not wish to buy an interest of that company unless it also acquired the Howell and Rigdon interest, seems to be pointless. Part of the charge of undue influence is based upon the fact that the defendant kept the purchase money of the oil that came from the land in escrow. The record shows that the title was in dispute; that in 1939 the defendant distributed the money which was due to the Sweetwater Oil Company and the Drayton Oil and Drilling Company; that this was done soon after it was informed of the fact that an agreement had been reached between these companies. It still kept in escrow 1/15th of the purchase money by reason of the Howell and Rigdon interest. That money amounted, in the fall of 1942, to approximately $15,000.00. In view of the fact that that interest was in dispute, the defendant could, of course, do nothing else except to keep the money in escrow until the ownership of that interest was finally determined. The plaintiff would have done exactly the same thing under the same circumstances.

The plaintiff intimates that the defendant paid nothing for the Howell and Rigdon interest, in view of the fact that the $10,000.00 paid to Howell and Rigdon came out of the escrow fund which amounted to over $15,000.00. That is a superficial view to take of the matter. The cost of that interest is part of the total price

paid to the Drayton Oil and Drilling Company, and whether defendant made an advantageous bargain depends on whether it paid too little or too much to that company. It is charged that the defendant purchased the Howell and Rigdon interest secretly. That it did not disclose the terms of the negotiation with the Drayton Oil and Drilling Company is doubtless correct. All of the parties in interest seem, however, to have had notice of the negotiation. Mr. Lee, representing the Howell and Rigdon right, made no secret of the fact that he was attempting to sell it, or settle it. Mr. Mazulla, secretary-treasurer of the Sweetwater Oil Company, seems to have received notice of that fact not only from Mr. Lee, but also from C. A. Brimmer and Mr. Geiger, who represented the rights of the Drayton Oil and Drilling Company, but he apparently took little, if any, interest in the matter until after the sale was actually made.

III.

The plaintiff herein contends that it is entitled to share in the benefit of the purchase of the Howell and Rigdon interest. The general rule is, without going into greater detail, that if one co-tenant acquires the interest of an outstanding paramount, hostile or adverse title he may, within a reasonable time, be compelled, upon reimbursement, to let his co-tenant participate in the benefits of his purchase. Binning vs. Miller, 55 Wyo. 478, 102 Pac. 2d 64; Note in 54 A. L. R. 874, et seq.; Note in 85 A. L. R. 1535, et seq.; Freeman on Cotenancy, 2d Ed., Sec. 154, et. seq. Plaintiff claims that this case falls within the foregoing rule. On the other hand it is stated in 38 Cyc. 53, as follows: "Although a tenant in common may not buy an outstanding paramount title so as to oust his cotenant, yet there is no reason why he may not buy in the independent interest of another tenant in common, and a purchase by

one cotenant of the interest of another does not inure to the benefit of all the remaining tenants in common". In 62 C. J. 462, it is stated: "The rule preventing one tenant in common from buying an outstanding title does not apply to the purchase by one tenant in common of the interest in title of his cotenant", etc. Freeman on Cotenancy, supra, Sec. 165,states: "The reasons which prevent a cotenant from purchasing and asserting an outstanding title, do not apply with equal, and generally not with any, force against his purchasing the title of his cotenants, whether the sale be voluntary or involuntary". In Hogan vs. Utter, 175 N. C. 332, 95 S. E. 565, the syllabus is as follows: "A tenant in common who buys the interest of another tenant in common sold under mortgage does not thus acquire an outstanding title, and the principle which prevents him from doing so has no application". In First National Bank vs. Bissell, 4 Fed. 694, the court stated in part that while all the tenants were "bound to maintain the common title, each was at liberty to purchase from the other in the same manner as a stranger might purchase from any or all of them, Alexander v. Kennedy, 3 Grant's Cases, 380. It has never been claimed that a purchase by one co-tenant of the interest of another would enure to the benefit of all who should retain their interest, and certainly there is nothing in the relations of such owners to support that doctrine". In Baird vs. Baird's Heirs, 21 N. C. 524, 534, the court stated: "The court is not aware of any decision that a tenant in common cannot, nor of any reason why he may not, purchase the interest of his fellow. Their estates are legal and several; the only union between them being that of possession. They do not hold in trust for each other. The rule is only, that the possession of one eo nomine is the possession of the other, and that such a possession will therefore never bar his companion. But the relation between them is not such as to forbid one from

purchasing from the other, upon the principle on which a Court of Equity regards with jealousy the dealings between persons who stand toward each other in a fiduciary capacity". In Murray vs. Murray 159 Minn. 111, 198 N. W. 307, it was contended that one cotenant could not purchase at execution sale the interest of another cotenant. The court said:

"The confidential or trust relationship between the cotenants, arising from their community of interest, did not preclude any of them from purchasing the undivided interest of another upon an execution sale effecting such interest only. Such relationship only prevents the purchase of an interest hostile to the common title. In Oliver v. Hedderly, 32 Minn. 455, 21 N. W. 478, we adopted the general rule that one cotenant cannot assert for his own benefit title to the common property through a purchase of a paramount interest. Here title to the common property is not asserted by one cotenant against the others. The judgment and execution sale did not affect the common title. No cotenant was forbidden, because of his cotenancy, from buying and asserting title to the undivided interest upon which alone the judgment rested".

Similar in effect is Snell vs. Harrison, 104 Mo. 158, 16 S. W. 152; MacDonald vs. Follett (Tex. Civ. App.) 175 S. W. 2d 671, 674.

It is quite apparent from the foregoing cases that the purchase by one co-tenant of the interest of another co-tenant is permitted. A fiduciary relationship does not arise from the mere fact that the parties are co-tenants. And ordinarily one tenant in common may deal with the co-tenant respecting the common property. Pure Oil Company vs. Byrnes, 388 Ill. 26, 57 N. E. 2d 356. Such a case stands upon a different footing from one in which a co-tenant purchases an outstanding paramount title or as counsel for plaintiff please to call it, where he purchases a hostile title. We shall point out the fundamental reason for the difference present-

ly, and in that connection shall cite other cases which are in line with the cases already cited. If then the Howell and Rigdon interest can be said to be a co-tenant's interest, it follows that the claim herein of the plaintiff cannot be sustained unless it can show some special circumstances which take the case out of the general rule. The court in the Howell and Rigdon case above mentioned, granted to them an undivided perma-nent interest in the oil and gas running with the land. Counsel for plaintiff in their brief, assert: "Certain it is that the decree did not establish the Rigdon and Howell interest as a co-tenancy interest as was stated by Sinclair's counsel in the lower court. The decree does not even mention co-tenants". And certain it is, we think, to use counsel's phraseology, that the Howell and Rigdon interest was not an outstanding paramount interest, as will be more fully shown hereafter. Hence if that interest is not a co-tenancy interest, it is hard to know what to call it. In Morrisons' Mining Rights, 15th Edition, 415, it is stated that "Two or more per-sons owning undivided interests in mining ground are tenants in common". The same statement is made in Phillips vs. Homestake Consol. Placer Mines Company, 51 Nev. 226, 273 Pac. 657. In Prairie Oil & Gas Co. vs. Allen, 2 Fed. 2d 566, the court, in speaking of an un-divided interest conveyed to one Trout, stated: "There can be no doubt that the deed from Good Land Com-pany to J. C. Trout legally and effectually severed a nine-tenths interest in the oil, gas and mineral in and under the land from the other one-tenth of the oil, gas and mineral, and the surface rights conveyed to Trout. * * * Therefore Good Land Company and Trout became the owners of the oil and gas as tenants in com-mon. Upon conveyance by Trout to Lizzie Allen, Good Land Company and Lizzie Allen became tenants in com-mon". In Burt vs. Steigleder, 132 Okl. 217, 270 Pac. 54, 55, which involved an undivided interest in oil and

gas rights the court stated: "Under the holding in the case of Prairie Oil & Gas Co. v. Allen (C. C. A.) 2 F (2d) 566, 40 A. L. R. 1389, the parties to this action were tenants in common in the oil and gas rights, and no different rule in such case appears to apply than in one where each own interests in the land as a whole". In Earp vs. Mid-Continent Petroleum Corporation, 167 Okl. 86, 27 Pac. 2d 855, 91 A. L. R. 188, also involving an undivided interest in oil and gas rights, the court said: "It is conceded that the owners of undivided portions of oil and gas rights in and under real estate are tenants in common". In Callahan vs. Martin, 3 Calif. 2d 110, 43 Pac. 2d 788, 796, 101 A. L. R. 871, the court, considering an interest of three percent in oil and gas rights stated: "We are of the view that an assignee of a royalty interest becomes in effect a tenant in common with his assignor who retains an interest in the oil rights, and with other assignees of percentage interests, in the right which the assignor had, by virtue of his ownership of the fee in the land, to drill for and produce oil". See also 14 Am. Jur. 89, Note 17; Pure Oil Company vs. Byrnes, supra. In Bissell vs. Foss, infra, the court treated an undivided interest in mining rights as an interest of a co-tenant. It seems that we should so treat the Howell and Rigdon interest.

Counsel for plaintiff, however, further claim that one co-tenant can buy the interest of another co-tenant only while that interest is "conceded" as a co-tenant's interest, but that while it is disputed by co-tenants one of them cannot purchase it without permitting the other to participate in the benefit thereof. They state: "The question of hostility is not dependent on any legal refinements. When two defendants in a lawsuit join together in fighting the claim of a third, hostility exists as a visible status. Regardless of who ultimately wins each side is adverse to the other until the last appellate court has entered its decree and time to seek rehearing

has expired". There exists, of course, a *mental* hostility in every dispute and litigation, but whether it does or can affect the actual status of a title is a different matter. It is easy enough to get up a dispute, or litigation in reference to any interest whatever, and we are not prepared to accept the existence of such dispute or litigation as a criterion of whether or not the title attacked is that of a co-tenant or of a person holding an outstanding adverse or hostile interest within the meaning of the rules above mentioned. Counsel have not cited us to any case holding with their contention. They doubtless have searched diligently. We have done likewise, and have not found any case so holding. One thing which, perhaps, has led to some confusion is the lack of uniformity in terminology in stating what cannot be bought by a co-tenant as against another. Some authorities use the term "hostile" claim, upon which counsel for the plaintiff have seized. Other authorities use the terms "outstanding hostile" or "outstanding adverse" or "adversary" interest; see 14 Am. Jur. 120; others use the term "adverse" interest. In Perkins vs. Johnson, 178 Tenn. 498, 160 S. W. 2d 400, 401, the court speaks of an "outstanding title or overhead claim". Wallace vs. Brooks, 194 Okl. 137, 147 Pac. 2d 784, speaks of a "distinct" title. As above noted, 38 Cyc. 53, speaks of an "outstanding paramount title", which, perhaps, is clearer than any other terminology, and is what the courts generally mean when they state that a co-tenant cannot buy the interest of another as against his co-tenant. The New Jersey court in Weller vs. Rolason, 17 N. J. Eq. 13, expressed the same thing when it stated: "Where two or more persons having an interest in lands claim under an *imperfect* title, and one of them buys in the oustanding title, such purchase will enure to the common benefit, upon contribution made to repay the purchase money". (Italics supplied). In the case at bar, the title of the Sweetwater Oil Com-

pany was not *imperfect* by reasons of the Howell and Rigdon interest; it merely reduced the 15/15th claimed to 14/15th, and that 14/15th was not in any way adversely affected by the Howell and Rigdon interest.

We indicated above that there must be some fundamental reason why, generally speaking at least, one co-tenant is permitted to buy the interest of another co-tenant without restriction, while in cases in which an oustanding paramount title is bought, other co-tenants have ordinarily the right to participate in the purchase. What is that reason? The one naturally suggested to the mind is that in one case the third co-tenant is not injured, while in the other he is. Counsel for the defendant state that courts uniformly approach the question from the viewpoint as to whether or not such claim "affects, diminishes, prejudices or undermines the cotenancy interest". Generally speaking at least, the authorities seem to bear out this statement. Courts will not ordinarily permit one co-tenant to acquire a tax title, title by foreclosure, or an incumbrance on the property without giving the other co-tenants the right to participate therein. 14 Am. Jur. 123 et. seq. In such cases there exists an outstanding paramount, or superior right or title, and the acquisition thereof by one co-tenant would necessarily injure or prejudice the other or others. In note to 54 A. L. R. 874, it is stated that one co-tenant cannot buy as against the others, an outstanding adversary claim to the common estate and assert it for his exclusive benefit to the *injury or prejudice* of his co-owners. Thus the injury or prejudice to the latter is made the criterion. Upon that criterion are based a number of decisions denying the right to participate in a purchase by a co-tenant. In Frank vs. Frank, 305 Ill. 181, 137 N. E. 151, one co-tenant of the reversion bought the life estate to which the land was subject. The other reversioners wanted to participate in the purchase. The court denied the right on the

ground that nothing was taken from the other co-tenants. The court said in part:

"Appellee by cross-error contends that he is entitled on contribution of one-fifth of the consideration, to share in the life estate deeded by Emma Frank to the other four children. The rule is that tenants in common stand in such confidential relation in regard to one another's interest that one of them is not permitted, in equity, to acquire an interest in the property hostile to that of the other. Ramberg v. Wahlstrom, 140 Ill. 182, 29 N. E. 727, 33 Am. St. Rep. 227; Bracken v. Cooper, 80 Ill. 221. This rule does not apply, however, where the interests are not hostile. The life estate of Emma Frank conveyed by her deed to the appellants did not vest in them an interest in any way hostile to the interest of appellee. His interest was originally subject to the life estate of Emma Frank. It is still so subject and is unaffected in any other way. The chancellor did not err in finding that the appellee had no right to participate in the income during the life of Emma Frank".

In Fleming vs. Casady, 202 Iowa 1094, 211 N. W. 488, one co-tenant bought an outstanding estate (lease for years), and the others wanted to participate. The court held that no such right existed. The court said: "Here the estate for years of the lessee and the fee in the lessors were distinct, separately owned and held under contract between them. The acquisition of the lease by one co-owner of the reversion could not operate to oust, threaten, or undermine the estate of the other co-owners. No advantage by breach of trust or confidence would result from the purchase of the lease by one of them". Similar in effect are Ramberg vs. Wahlstrom, 140 Ill. 182, 29 N. E. 727; London Extension Mining Company vs. Ellis, 134 Fed. 2d 405.

An interesting case is Bissell vs. Foss, 114 U. S. 252, 29 L. Ed. 126, and if anything heretofore said is not entirely clear, that case will dissipate all doubt. The facts in that case in so far as material here are substantially as follows: Bissell, Foss and Hunter and

some persons called the Missourians were co-owners of a mine in Colorado. The Missourians wanted to sell their undivided interest in the mine. Bissell and Foss had a conversation to the effect that Foss should attempt to buy the interest of the Missourians for the benefit of Bissell, Foss and Hunter. They were not able to do so for some pecuniary reasons. Then Foss and Hunter agreed between themselves to purchase the interest of the Missourians, Foss to undertake to purchase the property. That was done, Hunter furnishing most of the money necessary to make the purchase which was for $15,000.00. Thereafter Bissell wanted to participate in the sale and relied upon the rule that a co-tenant cannot purchase an outstanding title or encumbrance upon the joint estate for his own benefit. The court, after mentioning that rule and denying that right to Bissell, stated as follows: "But this rule cannot apply to Hunter and Foss. They purchased no outstanding title or incumbrance to the prejudice of the other tenant in common. They did what any tenant in common with entire good faith might do, namely, purchased the interest of some of their co-tenants without consulting the others. The title which they purchased of the Missourians was not antagonistic or hostile to the title of Bissell. Their purchase did not in any degree tend to injure or damage his interest. His share was just as valuable after as before the purchase, and his rights were the same. In such a purchase no trust or confidence is violated". The query also arose in that case as to whether or not Foss, having had the conversation with Bissell as above mentioned, should be compelled to let Bissell participate in the purchase in so far as his interest was concerned. The court said on that point: "It cannot be denied that, under the circumstances, there was an obligation on Foss to inform Bissell of the failure of their plan before making another with a third person. But it was not a legal obligation capable

of enforcement in foro externo, but only a natural obligation to be disposed of in foro conscientias. Story Eq. Jur., § 2. It was one of those obligations which was binding on the honor and conscience of the party, but one not the subject of a suit and not to be enforced of one not the subject of a suit and not to be enforced in a court of either law or equity".

It would seem that unless some special circumstances exist, a matter which will be discussed hereafter, the foregoing authorities are conclusive against the claim made by the plaintiff in this case. They clearly show that the title of a co-tenant stands on a different footing from an outstanding paramount or hostile title. Plaintiff's rights are not in any way injured by the acquisition by defendant of the Howell and Rigdon interest. It can make no difference to it whether that interest is still owned by Howell and Rigdon or is owned by the defendant. In fact it may be of advantage to it that the defendant now owns it, since it now has to deal with only one party instead of two or three. Applying the criterion of injury above mentioned, it becomes quite clear on what a weak basis rests the contention that a disputed and litigated interest becomes an outstanding or hostile interest. Mere dispute or litigation cannot turn an interest into one that injures when it was not one that injured before the dispute and litigation, nor can that change the nature of the interest, which stood on the same footing as the interest of plaintiff and its predecessors, into one that is or was paramount or superior. The case of Franklin Mining Company vs. O'Brien, 22 Colo. 129, 43 Pac. 1016, from which plaintiff has quoted at length, is in no way in conflict with the foregoing authorities. In that case it appears that one co-tenant bought the Dr. Franklin claim, which, as the court stated, was an outstanding paramount and superior claim to the claim of the co-tenants in that case, and the court therefore stated, and rightly

so: "but to permit a tenant in common of the Franklin claim to buy in the title of a senior conflicting mining location, and assert it against his cotenant in the junior claim, would certainly prejudice his cotenant; for, if this could be done, the title to the latter as to the conflicting ground would thus be as effectually extinguished as if the patent to the junior location itself were obtained, with hostile intent, by the tenant and successfully asserted against the cotenant". The case accordingly, is one of those cases in line with the Binning case above mentioned.

IV.

Plaintiff's claim herein is in substance that it is not only entitled to hold what it has, but that it is also entitled to a gain—a windfall as it were—by participating in the benefit of the purchase of the Howell and Rigdon interest, although it has done nothing to earn that windfall, and though it is not in any way injured by the fact that the defendant acquired the foregoing interest. That windfall is due the plaintiff, so its counsel contend, aside from the reasons heretofore mentioned, because special facts and circumstances exist in this case which created a relation of trust and confidence between the Sweetwater Oil Company and the Drayton Oil and Drilling Company, on account of which either of these parties were prevented from acquiring the Howell and Rigdon interest exclusively for its benefit. That is claimed to arise out of the fact that when on November 27, 1937, they agreed to convey their respective interests to C. A. Brimmer, as trustee, it was agreed as follows: "As to any alleged claim of Etta G. Rigdon and David J. Howell, the Sweetwater Oil Company does hereby agree to furnish and place of record all papers and instruments in its possession tending to show that said parties have no rights, claims or interest in or to the property or rights hereinabove describ-

ed". That relation of trust and confidence is also claimed to have arisen out of the fact that these parties jointly filed a demurrer in the Howell and Rigdon suit; that they filed answers therein and jointly prosecuted the appeal to this court. Counsel say that "A trust was thereby created which prevented the acquisition of such title whatever its nature". They claim to have a case exactly in point in United N. J. R. & C. Company vs. Consolidated Fruit Jar Company, (N. J. Ch.) 55 Atl. 46. The facts in that case, without stating all of the details, were substantially as follows: The lands involved in the case had all been owned by one Alpheus Freeman, who was dead at that time, and his interests were then owned by his heirs. Mary T. Clark was one of these heirs. It was expected that the Pennsylvania Railroad Company would need to acquire a right-of-way over these lands in the near future. In anticipation of that fact Smith and Welsh set out to acquire title to the land. In that they were aided by Mary T. Clark and her husband. They, with such assistance, acquired a number of interests from many of the heirs of Alpheus Freeman although they did not acquire the interest of Mary T. Clark. One particular tract, called Tract C, the only one of special interest herein, had been in the possession of one Howell, adverse to the Freeman interests. He, too, was dead at that time and his heirs claimed that they had acquired title thereto by adverse possession. These heirs conveyed that tract to Smith and Welsh for the consideration of $2,000.00. A right-of-way over the tract was condemned and the sum of $3,676.21 was awarded therefor. The question was whether or not, under these facts, Mary T. Clark and her husband should participate in the benefit of the purchase from the Howell heirs. The court held that while the title of the Howell heirs did not seem to be very good, yet, assuming that it was good, the Clarks were entitled to participate in the benefit of that pur-

chase, in view of the fact of the assistance which they had given to Smith and Welsh as above noted. It thus appears that the facts in that case were altogether different from the facts in the case at bar. The title of the Howell heirs, if it was any title at all, was an outstanding paramount and superior title, and that case is accordingly in line with those cases which hold that an outstanding paramount or superior title cannot be claimed by one co-tenant for his exclusive benefit. The case, accordingly, is not in point herein.

By the contract of November 27, 1937, the Sweetwater Oil Company was to furnish certain papers showing that Howell and Rigdon had no interest in the land. They evidently did not furnish any papers which proved to be conclusive. If it did not furnish the papers as it agreed, it may be that Drayton Oil and Drilling Company might claim a breach of trust and confidence on the former's part, but we cannot see that the reverse should be true. In fact, we fail to see any connection between furnishing these papers and the purchase of the Howell and Rigdon interest. About all that can be said about it is that it was in line with the claim subsequently made that Howell and Rigdon had no interest in the land. The position taken by both companies in the subsequent suit by Howell and Rigdon was, of course, the natural position which would be taken by any other parties under like circumstances. So far as appears in the record there was nothing which would have prohibited either party from withdrawing from the position then taken. According to the judgment finally rendered by the District Court the position was wrongfully taken. We are thus asked to declare that, for the purpose of gain, not for the purpose of protection, a relationship of trust and confidence should be enforced, if it existed, which grew out of acts which proved ultimately to be wrong in the judgment of the District Court. Nothing of that sort, of course, appears in

the New Jersey case, supra. Furthermore, we do not see much similarity between an attempt to take away property of the value of $10,000.00 without compensation, and the purchase of it for the sum of $10,000.00. While the aim—to gain the property—is the same, the methods employed are so totally different that it cannot be said that the purpose of buying the property was included in the joint effort to defeat the lawsuit, or that anything in connection with the purchase was in contemplation of the parties. That, at least, would seem to be true in the absence of a specific contract or understanding to that effect, which does not appear in the case. But even if there had been such an agreement or understanding there seems to be some doubt as to whether or not that would have been binding upon the parties. See Bissell vs. Foss, supra. That the agreements between the parties and their joint action did not contemplate any purchase of the property is borne out by subsequent events. The Sweetwater Oil Company was given the same opportunity as the Drayton Oil and Drilling Company to buy the property, but the Secretary-Treasurer of the former company gave scant consideration thereto, and seems to have taken little interest in the matter until after the sale was actually made.

We do not find any basis for estoppel herein. Finding no reversible error in the record, the judgment of the trial court should be affirmed. It is so ordered.

RINER, J. and KIMBALL, J., concur.

ON PETITION FOR REHEARING
APRIL TERM, 1946
Petition Denied, May 7th, 1946
(168 P. 2d. 565)

In support of the petition there was a brief by Dines

& Holme, Harold D. Roberts and Robert E. More, all of Denver, Colorado, John W. Turner of Eastland, Texas, and John U. Loomis of Cheyenne, Wyoming.

## OPINION ON REHEARING

BLUME, Chief Justice.

A petition for rehearing has been filed herein by the appellant, Sharples Corporation. In its brief, of sixty-five printed pages, filed at the original hearing of this case, the appellant devoted a little over half of a page to the doctrine of estoppel, claiming that by the agreement entered into between the parties in November, 1937, the parties partitioned the property among themselves, and that each partitioner is estopped to assert that in fact anything less than an undivided one-half interest was conveyed by Brimmer. They only cited 47 C. J. 282 relating to Partition. We held briefly that we could see no element of estoppel in the case under the theory presented to us at that time. In the brief accompanying the petition for a rehearing, the appellant relies upon the doctrine of estoppel by deed, claiming that in view of the fact that C. A. Brimmer, trustee, conveyed to the Sweetwater Oil Company a one-half interest in the lower sands of the land in question, one-half of the Howell and Rigdon 1/15th interest, the latter purchased by the Drayton Oil and Drilling Company subsequently for $10,000, inured under the doctrine of estoppel by deed to the benefit of the Sweetwater Oil Company. Counsel rely upon the rule stated in 19 Am. Jur. 610-612, and Balch et al. vs. Arnold et al., 9 Wyo. 17, 59 Pac. 434. The point now urged upon

us seems to be an entirely new point; at least the theory is different. We have held in a number of cases that this court need not consider any point not raised at the original hearing. Bank vs. Ludvigsen, 8 Wyo. 230, 257, 56 Pac. 994; Brewer vs. Folsom Bros., 43 Wyo. 517, 7 Pac. 2d 224, and other cases. We have concluded, however, that it is best to consider the doctrine now advanced by counsel in so far as it is necessary herein. We shall pass over the question of pleading and consider the merits of the contention. Annotations on the subject will be found in 58 A. L. R. 345; 144 A. L. R. 554; 3 A. L. R. 945-955.

The deed relied upon in this case is a deed made by C. A. Brimmer, as trustee, to the Sweetwater Oil Company, on July 7, 1938, as to the one half-interest in the oil and gas in the lower sands mentioned in the original opinion. A similar deed was executed on the same day to the Drayton Oil and Drilling Company, as to the remaining interest in the land in question. These deeds were made pursuant to a contract entered into on November 27, 1937, between the Drayton Oil and Drilling Company and the Sweetwater Oil Company. That agreement is, in so far as is necessary to be mentioned here, in words and figures as follows:

"WHEREAS, the parties hereto have heretofore made claims touching the property hereinafter described together with certain oil produced from said property and the proceeds received upon the sale of said oil, and it is the desire and intention of the parties hereto to adjust, settle, and compromise any accounts, debts, claims, demands, disputes and matters touching and relating to the said property.

"NOW, THEREFORE, in consideration of the said premises and the mutual covenants and agreements of the parties hereto, it is covenanted and agreed as follows, to-wit:

"The property referred to in this agreement is described as the North Half of the Southeast Quarter

(N½SE¼) of Section Three (3), Township Twenty-six (26) North, Range Ninety (90) West of the Sixth Principal Meridian, * * *.

"The Sweetwater Oil Company agrees to convey to C. A. Brimmer, trustee of the parties hereto, all of its right, title and interest in and to the property above described and mentioned, * * *.

"The Drayton Oil and Drilling Company, party of the first part, does hereby agree to convey to C. A. Brimmer, trustee for the parties herein mentioned, all of its right, title and interest in and to the property herein above described, * * *.

"And as to any alleged claims of Etta G. Rigdon and David J. Howell, the Sweetwater Oil Company does hereby agree to furnish and place of record all papers and instruments in its possession tending to show that said parties have no rights, claims or interests in or to the property or rights herein above described.

"It is agreed by and between the parties hereto that C. A. Brimmer, as trustee of the parties hereto, upon the furnishing and delivery of the papers and instruments of conveyance herein above mentioned, shall execute and deliver as said trustee instruments of conveyance to the parties hereto as follows:

"To the Sweetwater Oil Company, a corporation, an undivided one-half interest in and to all of the oil, gas and other minerals that may be produced from the oil and gas bearing sands lying below the Dakota and Lakota sands situated upon the North Half of the Southeast Quarter (N½SE¼) of Section Three (3), Township Twenty-six (26) North, Range Ninety (90) West of the Sixth P. M., * * *.

"To the Drayton Oil and Drilling Company, a corporation, a deed of conveyance for an undivided one-half interest in and to all of the oil, gas and other minerals that may be produced from the oil and gas bearing sands lying below the Dakota and Lakota sands situated upon the North Half of the Southeast Quarter (N½SE¼) of Section Three (3), Township Twenty-six (26) North, Range Ninety (90) West of the 6th P. M., * * *."

It was said in Balch et al. vs. Arnold, et. al., supra, that no conveyance can, as such, convey any title to any property not then possessed by the grantor; if it is to operate upon after acquired property it must be by way of estoppel. The appellant recognizes the rule that a mere quit-claim deed cannot give rise to estoppel by deed in the absence of warranties, covenants or representations. See 19 Am. Jur. 617 to 618. But it is claimed that the deed in question is more than a quitclaim deed and actually conveys a one-half interest in the lower sands of the land in question, particularly by reason of the habendum clause. The instrument is named a "Quit-Claim Deed". It provides "that the said party of the first part, for and in consideration of the sum of One Dollar and no/100 ($1.00) and other valuable consideration, lawful money of the United States of America, to him in hand paid by the party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby confessed and acknowledged, has remised, released and quitclaimed, and by these presents does remise, release and quit-claim, unto the said part of the second party and to its successors and assigns, forever, an undivided one-half interest in and to all of the oil, gas and other minerals that may be produced from the oil and gas bearing sands lying below the Dakota and Lakota sands situated upon the North Half of the Southeast Quarter (N½SE¼) of Section Three (3), Township Twenty-six (26) North, Range Ninety (90) West of the Sixth Principal Meridian". The habendum clause in the deed reads as follows: "To have and to hold all and singular the above mentioned and described premises together with appurtenances, unto the said party of the second part, his heirs and assigns forever." The deed contains no covenants and no warranties, and no representations of any kind as to the amount of interest which the grantor had in the property.

A similar deed, in connection with the doctrine of estoppel by deed, was considered in the case of Gibson vs. Chouteau, et al., 39 Mo. 536. The deed in that case contained the following words in the granting clause, to-wit; " 'Bargain, sell, release, quit-claim and convey unto Pierre Chouteau, Jr., * * * and his heirs' " the land in suit by description. (P. 548). The habendum was to the grantee and his heirs. (P. 566). The court stated among other things: "If this deed purports to convey the real estate in fee simple absolute, the after acquired title passes under the statute, otherwise not. There is no covenant of warranty, and no estoppel by virtue of any kind of express warranty. The words 'bargain, sell, release, quit-claim and convey' are words of release and quit-claim merely. They carry the grantor's interest and estate in the land described, whatever it may be; but they do not of themselves purport to do anything more; they do not even raise the statute covenants implied in the words 'grant, bargain and sell,' nor would these covenants operate as the ancient common-law warranty to transmit a subsequently acquired title * * *. It is essentially a quit-claim deed and nothing more. It makes no positive averment that the grantor is seized or possessed of any particular estate in the premises which the deed undertakes to convey and confirm. Such averments, to create an estoppel, must be positive and certain. * * * This deed can have no greater force than a mere quit-claim which expressly conveys only 'the right, title and interest' of the grantor."

In the case of Williams vs. Reid (Mo.), 37 S. W. 2d 537, the granting clause in the deed seems to have been similar to that in the deed involved in this case. The court stated: "To remise, release, and quit-claim designated land is generally understood to mean that the grantor releases any interest he may have in the land at the time, but that is all." The habendum clause in

378

that case was as follows: " 'to have and to hold the same, * * * (unto) the said party of the second part, * * * so that neither of the said parties of the first part, nor their heirs, nor any other person or persons for them or in their names or behalf, shall or will hereafter claim or demand any right or title to the aforesaid premises, * * * or any part thereof, but they and every one of them shall, by these presents, be excluded and forever barred'." The deed was held not to convey after acquired property. In the case of Wells vs. Chase, 76 Ark. 417, 88 S. W. 1030, the court said: "The deed in question is somewhat peculiar in its terms. It recites that the grantors 'have sold and released and quit-claimed' to the grantees, Wells and Gray, an undivided one-tenth interest in 'the following mining and mineral lands and claims' describing the claims in controversy, and others. The habendum clause contains a stipulation that the grantors will 'forever defend the title aforesaid against all parties who hold under or through' the said grantors. The effect of the deed was to convey to the grantees whatever title the grantors then had to the undivided one-tenth interest, and to warrant against any prior conveyances or incumbrances made or suffered by the grantors; but it did not purport to convey any title except what the grantors then had. They then had title to a lode claim, which was subsequently abandoned and forfeited. This is all that passed by the deed, and another title subsequently acquired did not pass."

In the case of Holmes vs. Countiss, 195 Ark. 1014, 115 S. W. 2d, 553, the deed was as follows: "I, * * * have this day bargained and sold and by these presents do bargain, sell and quitclaim * * * the following described lands' " (the description follows). It also had a habendum clause to the effect: " 'To have and to hold all of the above-described lands unto the said T. B. Holmes, and unto his heirs and assigns forever, to-

gether with all of the improvements and appurtenances thereunto belonging or in any wise appertaining'." The deed contained no express covenant or warranty. It was held that the deed was only a quit-claim deed creating no estoppel as to after acquired property. See also Adamson vs. Wolfe, Trustee, 200 Ark. 360, 139 S. W. 2d 674. In the case of Bruce vs. Luke, 9 Kans. 201, 12 Am. Rep. 491, the deed in substance was as follows: " 'For and in consideration of the sum of one dollar, and other valuable considerations in lawful money of the United States,' Johnnycake 'grants, bargains, sells, aliens, releases, quitclaims and conveys' unto Kate L. Simpson, the land in controversy, 'together with all the improvements, ways, easements, rights, privileges and appurtenances to the same, belonging, or in anywise appertaining, and all remainders, reversions, rents, issues and profits thereof, and all the estate, right, title, interest, claim and demand, either at law or in equity, or otherwise howsoever of the said' Johnnycake, 'in to, or out of said premises'." The deed was held to be a quit-claim and did not create an estoppel by deed. To the same effect are McCrackin vs. Wright, 14 John. 194; Jackson vs. Hubble, 1 Cow. 616. See also Annotation in 3 A. L. R. 945; Turick vs. Erdmann, 112 N. J. Eq. 261, 164 Atl. 40.

According to the foregoing cases the deed in question in this case would seem to be purely a quit-claim deed. The authorities, however, do not seem to be quite harmonious. In Garrett vs. Christopher, 74 Tex. 453, 12 S. W. 67, the court held that under a habendum clause similar to that in the case at bar the land itself is conveyed. The case did not involve the question of estoppel, and the rule in that case seems to have been repudiated in Hunter vs. Eastham, 95 Tex. 648, 69 S. W. 66. See note, 3 A. L. R. 949. See also Tiffany on Real Property (3rd Ed.) Vol. 4, P. 645. The case of Balch et al. vs. Arnold et al., supra, upon which counsel place a

good deal of reliance, is distinguishable from the case at bar. It involves a mortgage given for the consideration of $2,000.00, and, as the court held, the mortgage contained a warranty of title.

The ultimate criterion herein would seem to be the intention of the parties, which must be gathered, as counsel for appellant admit, from the deed itself and the surrounding circumstances. Balch et al. vs. Arnold et al., supra. The deed in question is denominated a "quit-claim deed". Mr. C. A. Brimmer, holding, as he did, merely the naked title, was hardly in a position to give any other kind of deed. The parties had agreed in their agreement of November, 1937, to make quit-claim deeds to C. A. Brimmer, trustee, for all their interests in the land—Brimmer in turn to execute deeds to the parties to the contract. The latter executed these deeds. They are identical in form with the deed from C. A. Brimmer, trustee, to the Sweetwater Oil Company, and contain the identical habendum clause. They were executed on a printed form, apparently generally used in Carbon County, Wyoming, to represent a quit-claim deed, and this printed form was probably also used in the deed to the Sweetwater Oil Company, although that fact does not appear in the record. Thus the parties themselves evidently agreed and understood that a deed in the above form, with the habendum clause above mentioned, constituted nothing more than a quit-claim deed, so that it hardly behooves the appellant at this late date to claim the contrary and assert that the Drayton Oil and Drilling Company intended a deed in that form to be something else. See Morrison vs. Wilson, 30 Calif. 344, as to an agreement that the deed shall be only a quit-claim deed.

The agreement between the parties of November, 1937, on which the deed in question here was based, was an agreement to compromise their respective

claims to the land. See in that connection Heyward vs. The State, 92 Ga. 591. No purchase or sale in the ordinary way was contemplated. The obvious intent was to determine, settle and divide between them the property which they actually had and owned. In the case of Wilson vs. Nichols, 39 Calif. App. 2d 527, 103 Pac. 2d 1007, an agreement of full settlement and release was entered into between the parties as to certain lands which included a lot in which plaintiff, at that time, had no interest. It was held that this agreement could be construed only as a release and quit-claim as to the lot mentioned, and did not give rise to an estoppel as to after acquired title, notwithstanding certain warranties contained in the agreement. In the case of Rispaud vs. Rispaud, 209 Calif. 375, 287 Pac. 466, wherein the parties partitioned property, it was held that after acquired property did not pass to the grantee in one of the deeds executed pursuant to the agreement of partition. "The basis of that doctrine" said the court, "is estoppel, and, when the facts clearly show that there was no misrepresentation, directly or indirectly, then there is nothing for the estoppel to act upon." See also Edwards vs. Worthington (Tex. Civ. App.), 118 S. W. 2d 328. There is no basis of any kind in the case at bar for claiming any misrepresentation, direct or indirect, on the part of the Drayton Oil and Drilling Company. Both parties knew of the outstanding Howell and Rigdon interest. The Sweetwater Oil Company undertook to furnish evidence showing the invalidity of the foregoing Howell and Rigdon interest. That evidence was not furnished, as shown by the result. The claim that under these circumstances, and without any other showing, the Drayton Oil and Drilling Company caused to be executed a deed to one-half interest in the lower sands, which, in effect, warranted the title to the whole thereof, is not credible. A number of cases have held that where the deficiency in the title appears in the

deed itself, no subsequently acquired title will pass. Midland Realty Co. vs. Halverson, 101 Mont. 49, 52 Pac. 2d 159, and cases cited. See, also, cases in note 58 A. L. R. 349; 19 Am. Jur. 349. That is substantially the situation in this case when we construe the deed in question along with the agreement of November, 1937. We need not determine how far the rule should be carried, but we see no reason why it should not be applied in this case. The rule is evidently based on the same principle stated in Rispaud vs. Rispaud, supra, namely, that when there is a total absence of deceit, direct or indirect, the rule of estoppel as to after acquired property does not apply.

Not every conveyance involves an estoppel; a sound reason must exist to result in an estoppel as to after acquired property. It has been said that the "presumption is against rather than for the estoppel, and those who rely upon it must show that it results from the language of the particular clause, and is consistent with the tenor and object of the deed. * * * A vague, general, or ambiguous statement, not indicating that the parties meant to tie themselves down to a particular state of facts, consequently will not operate as an estoppel, nor will it be raised by intendment of implication from language susceptible of another interpretation." 2 Smith's Leading Cases (8th Ed.) Page 821. Some of the cases have held that an estoppel by deed is not created or enforceable unless there has been a change in the situation of one of the parties in reliance on the deed. 31 C. J. S. 196. After all the rule of estoppel is fundamentally one of equity. Thus it was said in Midland Realty Co. vs. Halverson, supra, that "the doctrine of estoppel was invented and engrafted upon the law to prevent wrongs and not to promote them." In Jackson vs. Mills, 185 N. C. 53, 115 S. E. 881, the court said: "True, the doctrine of estoppel has been enlarged to include deeds without covenant or warranties, but only

to the extent and for the purpose of protecting bona fide purchasers. But it is still an equitable doctrine, not an inflexible rule, a shield of the innocent, and not a sword for destruction." Even if the deed in question here is more than a quit-claim deed, not a single sound and just reason can be found, so far as we can see, for applying the foregoing rule of estoppel as to after acquired property in this case. Whatever the parties undertook to do pursuant to the agreement of November, 1937, it was a reciprocal undertaking. The agreement specifically provides that it is entered into in consideration of the mutual covenants and agreements of the parties thereto. It is hardly true, as counsel claim, that "across the table the Drayton Oil and Drilling Company agreed to convey to the Sweetwater Oil Company an undivided one-half of all oil in the lower sands." The agreement, at most, could be said to be that the one-half interest above mentioned should be conveyed to the Sweetwater Oil Company provided that the latter would, in turn, cause the other one-half interest to be conveyed to Drayton Oil and Drilling Company. The Sweetwater Oil Company failed to perform its part of the agreement; it defaulted to the identical extent as the Drayton Oil and Drilling Company. The interest of Howell and Rigdon had to be purchased in order to divest the then holders thereof. It has frequently been said that the doctrine of estoppel has been adopted to avoid circuity of action. 31 C. J. S. 204. In other words it takes the place of actions which might otherwise exist—for instance, an action for the value of the property, in case of failure of title. No such action would lie in favor of the Sweetwater Oil Company or its assignees in this case, in view of its failure to perform. In an action on a contract containing mutual and dependent or concurrent promises or covenants, plaintiff must be ready to perform. 17 C. J. S. 1170, 1173. In this case the Sweetwater Oil Company never

was able to do so. The situation is very similar to that discussed in 31 C. J. S. 196, where it is stated that if both parties are estopped, the rights of the parties are to be adjusted without regard to any estoppel.

In view of the fact that the Sweetwater Oil Company undertook to furnish evidence of the invalidity of the Howell and Rigdon interest, and did not do so, its fault that such interest was not acquired pursuant to the agreement of November, 1937, appears to be greater than that of the Drayton Oil and Drilling Company. It is at least as great. To permit it, and its successors in interest, now to acquire one-half of that interest under the doctrine of estoppel by deed, would be to promote a wrong, not to prevent it.

We think it clear that the petition for rehearing should be denied, and it is so ordered.

RINER, J. and KIMBALL, J., concur.