## GEORGE B. ROBBINS AND ANOTHER v. W. B. HOBART AND OTHERS.[1]

### May 12, 1916.

### Nos. 19,716, 19,717—(116-117).

**Partition — report of referees.**

1. Where three referees are appointed by the court to make a partition of real estate, a partition reported and concurred in by two of them is valid and binding if approved by the court.

**Same.**

2. The statute does not require such referees to make and report findings of evidentiary facts.

**Same — review on appeal after approval by trial court.**

3. The report has the force and effect of a verdict, and where it has been approved by the trial court, it will not be set aside by this court on the ground that the referees erred in judgment unless manifestly inequitable.

**Deed—alteration after delivery—proof of title.**

4. Where a deed is executed and delivered, and is subsequently altered by the grantee, he cannot enforce any executory obligations contained therein; but his title remains unaffected, and he may prove such title by presenting the deed and proving its contents at the time of its execution.

Action for partition in the district court for Hennepin county. The case was tried before Fish, J. who made findings in favor of plaintiffs

[1] Reported in 157 N. W. 908.

---

Note.—On the effect of alteration of deed after delivery see note in 32 L.R.A.(N.S.) 284.

133 M.—4

and appointed referees to make the partition. Plaintiff's motion for amended findings was denied and the report of the majority of the referees was confirmed and ratified and judgment rendered in accordance therewith. Defendant's motion to strike from the files an affidavit of H. V. Mercer was denied. From the judgment and decree, defendant W. B. Hobart appealed and plaintiffs appealed. Affirmed on both appeals.

*H. V. Mercer & Co.* for plaintiffs.

*John J. McHale* and *Benjamin Davenport,* for defendant.

TAYLOR, C.

Action for partition of real estate. Both parties desired a partition, and the court, after determining that defendant W. B. Hobart owned a specified share of the land and that plaintiffs owned the remainder thereof, appointed three referees to make the partition. Two of the referees united in a report assigning a described parcel of the land to W. B. Hobart and the remainder thereof to plaintiffs. The third referee made a minority report similar to the majority report, except that it assigned to Hobart a larger quantity of land than the majority report. The court duly confirmed the majority report and rendered judgment partitioning the land in accordance therewith. Defendant W. B. Hobart, who will hereinafter be designated as defendant, appealed. Thereafter plaintiffs also appealed.

Defendant advances three propositions on his appeal: (1) That the report of the referees cannot be given effect because not unanimous. (2) that the majority report is defective in failing to specify in detail the manner of executing the trust; (3) that the majority report should have been set aside on the showing made by defendant in support of his claim that the partition made therein was inequitable.

1. Defendant states his first proposition without making any argument in support of it; and we think it is sufficiently answered by section 9411, G. S. 1913, which authorizes a majority to act where joint authority is conferred upon three or more.

2. The statute provides that the referees "shall make a report of their proceedings, specifying the manner of executing the trust, and describ-

ing the property and the share allotted to each party." [G. S. 1913, §8033].

The report in question is quite full and too lengthy to quote. It shows among other things that the referees "carefully examined all of the land * * * and all buildings and improvements thereon and made estimates of its value and the relative values of the different tracts and parcels of which it is made up;" that they held several hearings in which both parties took part; that they determined that the tract "awarded to defendant W. B. Hobart is, quantity, quality, location and improvements considered, equivalent in value" to that part of the entire property to which he was entitled, as determined by the judgment directing the partition, and that "the property and the share allotted to each party" is described with precision and accuracy. The statute does not require the referees to make findings of evidentiary facts, and we think that the report contains all that the statute requires, in a case in which no claim is made that the character of the property precludes an equitable division.

3. At the hearing upon the motion to confirm the report, defendant presented several affidavits to the effect that in the opinion of the affiants defendant should have been allotted a larger acreage, in order to make the value of the land awarded to him equivalent to the value of his share in the entire property. The report of the third referee was also to the same effect. Defendant insists that the court erred in refusing to set aside the majority report upon the minority report supported by these affidavits.

The majority report was in law the report of the referees. An application to set aside such report is usually considered as analogous to a motion for a new trial, and the report as entitled to the same force and effect as the verdict of a jury or a finding made by the court. Knapp, Partition, 221; Freeman, Cotenancy and Partition, § 525, 30 Cyc. 265, 266. No claim is made that the referees were not fair, impartial and well qualified to perform their duties, nor that they overlooked any facts or followed an erroneous theory. Neither does defendant question that they acted according to their honest judgment. The showing made to the court disclosed a difference of opinion in respect to the relative value of the two parcels into which the property had been divided. The opinion of the two referees, set forth in their report, was formed after a careful

investigation made for the express purpose of determining that question. That report has been approved and confirmed by the trial court after considering the adverse evidence; and such adverse evidence is not so strong and convincing that we can say that the court erred.

Plaintiffs in their appeal attack the title of defendants. The record states that it was conceded at the trial that in August, 1907, one Ames who was the owner of 35/197 of the land in controversy, "executed and delivered to the defendant M. P. Hobart, as grantee, a warranty deed thereof for the consideration of Thirty-five Hundred (3,500) Dollars;" and that in September, 1907, "the said M. P. Hobart erased his initials 'M. P.' from said last-named deed, and inserted in the place thereof the initiale 'W. B.,' so that the grantee therein read W. B. Hobart." It also appears from the record that M. P. Hobart is the father of W. B. Hobart; that M. P. Hobart, after acquiring the property, wished to convey it to his son, and, in an attempt to accomplish that purpose, erased his own initials in the deed to himself and inserted therein the initials of his son, and that subsequently, on learning that the title could not be transferred to his son in that manner, he executed a formal deed to his son for the property. It also appears that, after the execution and alteration of the deed from Ames to M. P. Hobart and with full knowledge thereof, plaintiffs procured a conveyance to themselves of the interest in the property, if any, still held by Ames.

Plaintiffs' sole contention is that the alteration made by M. P. Hobart in the deed from Ames to himself precludes defendants from proving title to the interest in property which would otherwise have been conveyed thereby.

We deem no extended discussion necessary. As stated in Clark v. Creswell, 112 Md. 339, 76 Atl. 579, 21 Ann. Cas. 338, "A deed is merely the medium for the transfer of the title from the grantor to the grantee, and when its purpose is once fully accomplished its subsequent disposition cannot affect the title is has conveyed. It may be altered, mutilated, lost or destroyed; its executory provisions may be rendered inoperative by fraudulent changes or otherwise; but the title which has passed by it will remain undisturbed." In 1 Devlin, Deeds, it is said in section 460: "The true rule seems to be that if the deed is altered after execution by a party claiming some benefit under it, or

by his privity, its operation as an executed contract is not affected. Titles vested by it are not. disturbed, but the party making the alteration is deprived of all *future* benefits that he might have derived from it, and cannot enforce any executory obligation contained in it. * * * The principle is, that it is the instrument and not the estate which is rendered void. When the title has passed by the delivery of the deed, it is immaterial what becomes of the deed afterward, so far as the title itself is concerned. But if the deed is altered by the party in a material respect, he loses all remedy on any covenants which it may contain. It requires, confessedly, a new deed to reconvey the title of the grantor. Its alteration or complete destruction, even with intent to transfer the title, cannot have that effect." In R. C. L., 999, in pointing out the distinction between the effect of an alteration upon on executory contract and its effect upon an executed contract it is said: "Where the right is executory, and the instrument securing and evidencing it is thus altered, not only is the paper as evidence of the right destroyed, but the right itself is also destroyed; while, on the other hand, where the instrument merely evidences an executed transaction, and is a memorial of it, the rights which vested by virtue of that transaction in the person who alters the instrument are not thereby destroyed or divested, whatever may be the effect of the alteration upon the memorial itself." On page 1004 it is further said: "According to some courts, it would seem that not only is the right which has passed by an executed instrument unaffected by the kind of destruction of the paper—as it would be unaffected by the physical obliteration of the paper—but also that the paper itself, eliminating the unauthorized alterations of it, continues to be a memorial of the right or title, and may be adduced in evidence to prove the passing and vesting of such right or title. Other cases, however, hold that while a party does not divest himself of title to land by an unauthorized alteration, in a material part, of the deed by which it was conveyed to him, yet he cannot adduce such deed in evidence to prove such conveyance and the existence of title in himself, but must prove the conveyance by other evidence. On principle, the former doctrine seems the sounder of the two. Title does pass and is not divested by the subsequent alteration, and notwithstanding the unauthorized erasures or interlineations, it is open to the grantee named in the paper

to show, by any competent evidence, the passing of title into him. In other words, he may and must show that a deed conveying the land to him was executed by the grantor named in the altered paper; he must prove the execution and contents of a deed, and this, of course, by the best evidence the case admits of. He cannot resort to parol evidence to prove the contents of a paper which has not been lost or physically destroyed, but, on the contrary, is then in his possession, and in court. The paper itself, regardless of a signature to it, would be the best evidence of its contents. It is upon him to prove a deed as that deed existed a moment after its execution was completed by delivery to him. The best and apparently the only competent evidence of the contents of such a deed is the deed itself."

The several statements of the law which we have quoted are abundantly supported by the authorities.

In the instant case the execution of the deed from Ames to M. P. Hobart and its contents at the time it was executed is admitted. This deed vested the title in M. P. Hobart. Such title remained unaffected by the subsequent alteration of the deed, and passed to W. B. Hobart by the deed executed by M. P. Hobart. The judgment appealed from is affirmed as to both appeals.