*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0316**

In the Matter of the Estate of:
Orville C. Jacobson, Deceased

In the Matter of the Estate of:
Hughie Eugene Keenan, Deceased

**Filed April 25, 2016
Affirmed
Peterson, Judge**

Hennepin County District Court
File Nos. 27-PA-PR-14-466/27-PA-PR-06-532

Douglas Keenan, Bloomington, Minnesota (attorney pro se)

Jeffrey R. Vesel, Bloomington, Minnesota (for respondents Phyllis Jordahl and Richard Keenan)

Considered and decided by Peterson, Presiding Judge; Kirk, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this probate matter, appellant argues that the district court erred by determining that a warranty deed is invalid. We affirm.

**FACTS**

Appellant Douglas Keenan is the son of decedent Hughie Eugene Keenan (father) and decedent Alice Marilyn Keenan (mother). He is also the maternal grandson of

decedent Orville Jacobson (grandfather) and the maternal nephew of Phyllis Jordahl (aunt). Appellant's four siblings are Richard Keenan (Richard), Robert Keenan (Robert), Todd Keenan (Todd), and Penny Huddleston.[1]

Father died testate on October 23, 2001, and grandfather died testate on May 17, 2002. Father's estate proceeded to formal probate in 2006. Mother died on April 1, 2013.

On July 1, 2014, appellant filed a petition for determination of descent of grandfather and an amended petition for determination of descent of father.[2] In the petitions, appellant asked the district court to determine that father and grandfather each owned a one-quarter interest in residential property located in Anoka County at 22345 Variolite Street NW in Nowthen (property). These claimed interests were based on an unrecorded warranty deed dated October 13, 1993, in which Richard, the registered owner of the property, purportedly conveyed the property to "[grandfather, mother, father] and [Richard], each with an undivided one-quarter interest."

Aunt and Richard objected to the petitions, and a referee held a hearing on both petitions to determine the validity of the unrecorded 1993 deed. Appellant, who is an attorney, appeared pro se. Other witnesses included Robert, Richard, and aunt. Appellant also sought to recoup $112,960 that his parents purportedly invested in the property, but the referee refused to hear evidence on that subject because it was outside the scope of the hearing.

---

[1] Todd Keenan and Penny Huddleston did not participate in any probate proceedings.
[2] Appellant had also petitioned to be appointed as special administrator for the estates of father and grandfather, but the petitions were denied.

Appellant testified that (1) his parents and grandfather knew of the deed's existence, and that the deed was in the possession of his parents for about 20 years, but they did not record it because they could not afford to pay delinquent taxes on the property; (2) he drafted the deed because his parents had provided funds for the purchase of the land, materials for the house that was built on the land, and "several loans after that"; and (3) as a favor to Richard, he discussed the deed with the attorney who represented Richard's ex-wife at the time of their divorce.

Robert testified that (1) after mother died in 2013, Richard and Todd went to mother's home and threw out 87 bags of paperwork with the intention of destroying the 1993 deed, but Robert found the deed in the safe; and (2) Richard wanted to obtain a quit-claim deed to the property from mother in 2011, but she was suffering from dementia by that time and could not provide a legible signature. On cross examination, Robert admitted that he had served a five-year prison sentence for manufacture of a controlled substance and that his license to practice medicine was revoked.

Richard testified that (1) he built the house on the property in 1990 and he has lived in the house since 1991; (2) after he refused to sign the 1993 deed, he was tricked into signing it by appellant, who told him to sign what he thought was another sheet of paper so that the "house will go back to [mother] and [father] if something happens to you;" and (3) he was not aware of the significance of what he was signing and trusted appellant because "he was my brother, and I believed he was my attorney." Richard denied cleaning out his mother's house after her death.

Aunt testified that (1) grandfather gave Richard $35,000 at the time of his divorce to "save his property"; (2) both grandfather and mother tithed to Richard for his ministry work, and the money they gave Richard was given "with no strings attached"; (3) the $35,000 was paid to enable Richard to buy out his ex-wife's interest in the Anoka County property at the time of their divorce; and (4) the source of this money was funds that were either given to Richard or tithed to his ministry for that purpose.

In an order denying the petitions for determination of descent, the referee found that (1) Richard received fee title as the sole owner of the property in 1997 when he agreed to pay his ex-wife $35,000 for her interest in the property; (2) "[t]he testimony of all three Keenan brothers, [appellant], Robert, and Richard, is less than credible"; (3) aunt was the only credible witness; (4) father and mother were unaware of the 1993 deed; (5) Richard did not intend to sign the deed or convey his property to others; and (6) the deed was not delivered to the purported grantees.

The referee declared the 1993 deed void and denied the petitions for determination of descent. The referee ruled that the 1993 deed was invalid because it had not been delivered and because Richard did not intend to sign it or to transfer title to the purported grantees. The district court signed the order.[3]

Appellant brought a pro se appeal to this court. No brief was filed on behalf of any respondent, and by order of this court, the appeal was directed to proceed on the merits.

---

[3] *Robbins v. Hobart*, 133 Minn. 49, 51, 157 N.W. 908, 909 (1916) (noting that in property matters the district court may approve and confirm a referee's decision), Minn. Stat. § 484.70, subd. 7(c) (2014) (stating that referee's findings and order became the district court's findings and order when confirmed by a judge).

**D E C I S I O N**

Appellant appears to assert that the district court erred in concluding that the 1993 deed is invalid. He argues that the deed is based on a contract between his parents and Richard, the deed became valid when Richard signed it, and the deed was "presumed to have been delivered." We reject these arguments.

First, "[i]t is . . . elementary that delivery of a deed is essential to transfer of title." *Slawik v. Loseth*, 207 Minn. 137, 139, 290 N.W. 228, 229 (1940). There was conflicting testimony about whether the deed was delivered to the grantees, and the referee found that the deed was not delivered. *See In re Butler*, 868 N.W.2d 243, 249-50 (Minn. 2015) (according deference to referee's findings that are based on credibility determinations). Appellant's failure to prove that the deed was delivered to the grantees is fatal to his claim.

Second, for delivery to be valid, Richard must have intended to convey title to the property. *See Exsted v. Exsted*, 202 Minn. 521, 524-25, 279 N.W. 554, 557 (1938) (requiring for valid delivery of deed "an intent to convey title thereby"). Richard testified that he signed his name to a document for a different purpose and denied that he intended to transfer his interest in the property by signing the document. Appellant contested this testimony, but the referee found in favor of Richard, and this court defers to findings based on credibility determinations. *See Butler*, 868 N.W.2d at 249-50; *Hasnudeen v. Onan Corp.*, 552 N.W.2d 555, 557 (Minn. 1996) (stating that appellate courts "accord[] great deference to a [district] court's findings of fact because it has the advantage of hearing the testimony, assessing relative credibility of witnesses and acquiring a thorough understanding of the circumstances unique to the matter before it"). The referee's findings

5

of fact are not clearly erroneous. *See Drews v. Fed Nat'l Ass'n*, 850 N.W.2d 738, 741 (Minn. 2014) (stating that "appellate courts apply the facts as found by the district court unless those factual findings are clearly erroneous"); *see also* Minn. R. Civ. P. 52.01.

Appellant next argues that the referee abused his discretion by issuing a ruling at the beginning of the hearing to exclude evidence that would establish the factual underpinnings for the transfer of interests in the property from Richard to the purported grantees. Rulings on the admissibility of evidence are subject to an abuse-of-discretion standard of review. *See Melius v. Melius*, 765 N.W.2d 411, 417 (Minn. App. 2009) ("A district court's ruling on the admissibility of evidence will only be reversed if the court abused its discretion and the abuse of discretion prejudiced the objecting party.").

It is unclear from the record exactly what evidence appellant refers to in making this claim. Before the hearing, appellant described the issue as follows:

> [M]y grandfather, my father and my mother put in $112,960 investment in that property and (indiscernible) from the person who originally bought it and then two years after that and then to pay off his ex-wife for – we find $112,960 that I can verify that was invested in that property, and we want the money back.

Even if this evidence had been fully credited by the referee, it does not alter the determination that the 1993 deed is invalid.

**Affirmed.**