Pronschinske and her husband appeal.
ISSUE
Did the district court err by granting the Neumanns' motion to set aside the referees' report, by denying the Pronschinskes' motion to confirm the referees' report, and by determining that the two parcels should be partitioned in kind so that each of the three cotenants owns an equal number of acres of the property?
ANALYSIS
The Pronschinskes argue that the district court erred by setting aside and not confirming the referees' report. Specifically, they argue that the district court erred by not giving deference to the referees' findings and by reasoning that the referees' recommendation is not supported by law. They also argue that, in light of the circumstances of this case, the district court erred in its independent analysis of *47 the parties' arguments by not giving sufficient consideration to equitable principles.
A.
An action to partition real property is governed by chapter 558 of the Minnesota Statutes. The first partition statute was enacted in the territorial period and was amended in modest ways in the half-century that followed. See Minn. Rev. Laws §§ 4387-4456 (1905); Minn. Stat. §§ 5770-5815 (1894); Minn. Stat. ch. 74 (1866); Minn. Stat. ch. 65 (1858); Minn. Stat. ch. 75 (1851). The provisions of chapter 558 have changed very little since the 1905 revision of the state's statutes. Compare Minn. Stat. §§ 558.01 -.32 (2018) with Minn. Rev. Laws §§ 4387-4456 (1905). Chapter 558 and the accompanying caselaw provide multiple ways by which a partition action may be resolved.
First, a district court may order a partition in kind. Minn. Stat. § 558.01 (2016). A partition in kind is the "physical division of property held in tenancy in common." 7 Richard R. Powell et al., Powell on Real Property § 50.07 [4][a], at 50-46.2 (Michael Allan Wolf ed. 2000). For example, a property owned by four co-tenants may be divided into four lots of equal size and equal value.
Second, a district court may order a partition in kind with compensation. Minn. Stat. § 558.11 (2016). "When it appears that partition cannot be made equal between the parties without prejudice to the rights or interests of some, the court may adjudge compensation to be made by one to another for equality of partition." Id. Compensation under these circumstances is sometimes referred to as "owelty." See, e.g., Kauffman v. Eckhardt , 195 Minn. 571, 573, 263 N.W. 610, 611 (1935) (stating that district court could use owelty to compensate a party who receives farmland worth less than co-tenant's farmland after partition); see also Black's Law Dictionary 1279 (10th ed. 2014) (defining "owelty" to mean "compensatory sum of money given after an exchange of parcels of land having different values or after an unequal partition of real property"). Owelty should be used "when necessary to make an equitable and fair division." Hoerr v. Hoerr , 140 Minn. 223, 226, 165 N.W. 472, 474 (1917). Owelty may be ordered "in an appropriate case without the consent of the tenant whose interest is charged." Id. at 225, 165 N.W. at 473.
Third, a district court may order a partition by private sale. Minn. Stat. § 558.14, .17 (2016). "[I]f it is alleged in the complaint and established by evidence that the property, or any part of it, is so situated that partition cannot be had without great prejudice to the owners, the court may order a sale of the property or of such part." Minn. Stat. § 558.14. A district court may order property to be sold by private sale only if it is in "the best interests of the owners of the property." Minn. Stat. § 558.17. In a private sale, the property must be "appraised by two or more disinterested persons," and the property cannot be sold for less than its appraised value. Id. Various statutory provisions govern particular aspects of a partition by private sale, such as liens on property, apportionment of costs, application of proceeds, and the manner of sale. See, e.g. , Minn. Stat. §§ 558.09, .10, .14, .15, .17, .18, .19, .22, .24 (2016).
Fourth, a district court may order a partition by public sale. Minn. Stat. § 558.17. "The sale may be by public auction to the highest bidder for cash, upon published notice in the manner required for the sale of real property on execution." Id. ; see also Jallo v. Jallo , 219 Minn. 241, 243-45, 17 N.W.2d 710, 711-12 (1945). In a public sale, notice must be published stating the terms of the sale and whether the *48 property is subject to a prior estate, charge, or lien. Minn. Stat. § 558.17. A public sale is also governed by various statutory provisions that govern private sales. See, e.g. , Minn. Stat. §§ 558.09, .18, .19, .22, .24.
Fifth, a district court may order a partition by set-off. Minn. Stat. § 558.12 (2016). The pertinent statute provides:
When the premises consist of a mill or other tenement which cannot be divided without damage to the owners, or when any specified part is of greater value than either party's share, and cannot be divided without damage to the owners, the whole premises or the part so incapable of division may be set off to any party who will accept it, that party paying to one or more of the others such sums of money as the referees award to make the partition just and equal; or the referees may assign the exclusive occupancy and enjoyment of the whole or of such part to each of the parties alternately for specified times, in proportion to their respective interests.
Id.
Sixth, in addition to the remedies specifically authorized by statute, a district court may fashion an appropriate remedy based on the circumstances of a particular case by relying on equitable principles. Specifically, a district court
may exercise its general equitable powers and resort to the most advantageous plans which the nature of the particular case admits in effecting, without great prejudice to any of the owners, a partition of one or more tracts, whether such partition be accomplished by a division in kind, by sale, or by any practical combination of both methods.
Swogger v. Taylor , 243 Minn. 458, 466-67, 68 N.W.2d 376, 383 (1955) ; see also Carlson v. Olson , 256 N.W.2d 249, 255 (Minn. 1977) ; Andersen v. Andersen , 376 N.W.2d 711, 716 (Minn. App. 1985). A district court may use its equitable powers "to fill out the silent spaces in the partition statutes" because a district court's power to resolve a partition action is not confined to the statutory provisions. Swogger , 243 Minn. at 461-64, 68 N.W.2d at 380-82.
Although multiple remedies are available, "the law favors partition in kind rather than a sale and a division of the proceeds among the owners," so long as a partition in kind "can be had without great prejudice to the owners." Id. at 467, 68 N.W.2d at 384. The term "prejudice," in this context, means that "the value of each share if [physical] partition is made will be materially less than the share of money equivalent that could probably be had on a sale of the whole." Beebout v. Beebout , 447 N.W.2d 465, 467 (Minn. App. 1989) (alterations in original) (quoting Pigeon River Lumber Co. v. McDougall , 169 Minn. 83, 87, 210 N.W. 850, 852 (1926) ). "The law favors partition in kind, as opposed to partition by sale, as the former does not force a person to sell his or her private property." Id.
B.
The partition statute expressly provides for the appointment of referees in a partition action. "[I]n a proper case, the court shall render judgment that partition be made accordingly, and shall appoint three disinterested and judicious citizens of the county as referees to make partition and set off the shares of the several persons interested as determined by the judgment." Minn. Stat. § 558.04 (2016).
The partition statute also specifies the manner in which court-appointed referees shall discharge their duties:
When partition is made, the referees shall divide the property, and allot the several portions thereof to the respective *49 parties, quantity and quality relatively considered, according to their respective rights, designating the several portions by proper landmarks, and may employ a surveyor, with necessary assistants, to aid them therein. They shall make a report of their proceedings, specifying the manner of executing the trust, and describing the property and the share allotted to each party, with a particular description thereof.
Minn. Stat. § 558.06 (2016).
The partition statute further provides, "The court may confirm or set aside the report, and, if necessary, appoint new referees." Minn. Stat. § 558.07 (2016). In considering a motion to confirm or to set aside a report of court-appointed referees in a partition action, the district court is required to give considerable deference to the report. The supreme court has stated, "An application to set aside such report is usually considered as analogous to a motion for a new trial, and the report as entitled to the same force and effect as the verdict of a jury or a finding made by the court." Robbins v. Hobart , 133 Minn. 49, 51, 157 N.W. 908, 909 (1916) ; see also Hoerr , 140 Minn. at 227, 165 N.W. at 474 (quoting Robbins , 133 Minn. at 51, 157 N.W. at 909 ).
C.
Because the district court set aside the referees' report in this case, and because the Pronschinskes contend that the district court erred by doing so, it is necessary to consider the extent to which a district court in a partition action is obligated to defer to referees and the extent to which a district court may order a remedy that is contrary to a remedy recommended by referees.
In comparing a referees' report to a jury's verdict or a court's finding, the supreme court in Robbins cited three secondary sources, including A.C. Freeman, Cotenancy and Partition (2d ed. 1886). See Robbins , 133 Minn. at 51, 157 N.W. at 909. The Freeman treatise, which the supreme court has cited on multiple occasions,[1] explains the origins of the role of court-appointed referees in a partition action and the rationale for the deference that courts must give to a report of referees.
Freeman explains that, historically, a court would make an initial determination that all parties to a partition action have a valid interest in the property and that a partition is appropriate:
Whether the proceeding for partition was prosecuted at law or in equity, it was first necessary to decide whether the parties were cotenants and entitled to partition. This question being resolved in the affirmative, it was next necessary to determine the respective moieties[2 ] of each of the parties. The result of the decision of these two questions was the judgment quod partito fiat. This was the first or interlocutory judgment in partition.
Freeman, supra , § 516, at 686. In Minnesota, this interlocutory judgment is specifically required by section 558.04.
Freeman also explains that, in the chancery courts, a court's interlocutory order *50 authorized lay persons to perform certain tasks that are necessary for a partition:
In Chancery, the decree for partition ordered: 1st, that a partition be made between the plaintiffs and defendants, in certain moieties which it specified; 2d, that a commission or commissions issue to certain persons to be therein named; 3d, that the commissioners do make a partition, (here specifying the manner in which it shall be made); 4th, that all writings, surveys, muniments of title, etc., be produced before the commissioners; 5th, that the commissioners examine witnesses, as they may think fit; 6th, that after such partition has been made, that the parties execute conveyances to each other respectively.
Freeman, supra , § 516, at 686-87. The court-appointed lay persons were "commonly called commissioners, sometimes referees, and more rarely partitioners." Freeman, supra , § 522, at 691. In Minnesota, a district court's appointment of a panel of referees is specifically required by section 558.04.
Freeman also explains that, because the court-appointed commissioners or referees "have no power to determine questions of title," they "have no other duty to perform, or authority to act, than to divide the estate according to the directions contained in the warrant." Freeman, supra , § 522, at 691. The referees "are authorized to employ a surveyor when necessary, and are directed to divide the lands in such manner as to give each cotenant, as nearly as possible, his proportion in value." Freeman, supra , § 522, at 691. Freeman describes the then-current state of the law as follows: "In many of the States, they have power to determine whether a partition can be made without great prejudice to the cotenants, and may, instead of attempting a partition, report to the Court that they find a division prejudicial or impracticable, and that they therefore advise a sale." Freeman, supra , § 522, at 691. The referees "must take into consideration all the circumstances," and they "should, so far as they can do so without injustice to the others, assign each cotenant the part most valuable to him, whether this special value arose from his having made improvements or from any other cause." Freeman, supra , § 522, at 692. Furthermore, "[i]f there are several parcels, [the referees] need not divide each parcel, but may assign one parcel to each cotenant." Freeman, supra , § 522, at 692.
Freeman further explains that the result of the referees' work should be reflected in a written report:
When the commissioners have completed their allotments, they must prepare and return to the Court whence the commission issued a report showing what they have done, and the proceedings had before them. ... The report must show how the property has been divided, and to whom the several parts have been allotted. ... The report of the commissioners need not be unanimous.
Freeman, supra , § 523, at 693-94. In Minnesota, a written report by the referees is specifically required by section 558.06.
Finally, Freeman explains in detail the deference that is owed to the written report of court-appointed referees:
The report of the commission is not final. It may be set aside by the Court. But where the Court is asked to set aside the action of the commissioners, on the ground that they erred in making their allotments, whereby an unequal partition has been made, it will not grant the relief asked except in extreme cases-cases in which the partition is based on wrong principles, or it is shown by a very clear and decided preponderance of evidence that the commissioners *51 have made a grossly unequal allotment. In one case, it was said that the report of the commissioners is to be regarded in the light of a verdict of a jury rendered upon a trial at law ; and it will be disturbed or interfered with by the Court only upon grounds similar to those on which a verdict would be set aside and a new trial granted. Nay, more: it will be regarded with greater consideration even than a verdict , because, in this particular instance, the commissioners are persons who are selected by the parties themselves on account of their superior judgment and capacity to perform this particular service, and they were authorized to act upon a personal view of the property, and upon their individual knowledge of its value, location, etc., which they were left to acquire at their leisure, and from all the best sources of information in their power, and without regard to rules and forms of judicial proceedings in acquiring their knowledge. In England, it is improper for the Court to interfere with the valuation of the commissioners, unless there be any mistake in it so gross as to induce the Court to think that the commissioners have acted from unjust, corrupt, or fraudulent motives.
Freeman, supra , § 525, at 695-96 (emphasis added) (quotations and citations omitted). Freeman also asserts that the report of court-appointed referees may be set aside for procedural errors that adversely affected the rights of the parties, such as a lack of notice, in which event the matter should be remanded to the referees, or misconduct by the referees, in which event new referees should be appointed. Freeman, supra , § 526, at 696. "If the Court sets aside the report of the commissioners, it cannot proceed to make a partition, but must refer the partition back to the same commissioners, or appoint others in their stead." Freeman, supra , § 526, at 696.
We find the Freeman treatise helpful in interpreting Minnesota's partition statute and in understanding the early cases arising under it. We consider the Freeman treatise to be influential in shaping Minnesota law because, as noted above, the supreme court has cited the treatise on multiple occasions. See supra note 1.
D.
We now turn to the Pronschinskes' primary argument-that the district court erred by setting aside and not confirming the referees' report. The Pronschinskes contend that the district court did not give appropriate deference to the referees' findings and incorrectly determined that the referees' recommendation is contrary to law.[3]
As stated above, "An application to set aside [a referees'] report is usually *52 considered as analogous to a motion for a new trial, and the report as entitled to the same force and effect as the verdict of a jury or a finding made by the court." Robbins , 133 Minn. at 51, 157 N.W. at 909. In considering a motion for a new trial, a district court is not "free to set aside a jury verdict whenever it is displeased or dissatisfied with the result of the jury's deliberations." Koenig v. Ludowese , 308 Minn. 380, 383, 243 N.W.2d 29, 30 (1976). Rather, a jury's verdict "will not be set aside unless clearly and palpably against the evidence." Id. (quoting Rheiner v. Stillwater St. Ry. & Transfer Co. , 29 Minn. 147, 150, 12 N.W. 449, 451 (1882) ). A district court should not grant a motion for a new trial if "the preponderance of the evidence fails to suggest clearly jury mistake, improper motive, bias, or caprice" or if there are "no expressed and articulable reasons, based upon demonstrable circumstances or events, which support a conclusion that injustice has been done." Id. at 384, 243 N.W.2d at 31. Likewise, a referees' report in a partition action may be set aside if "it is shown by a very clear and decided preponderance of evidence that the commissioners have made a grossly unequal allotment." See Freeman, supra , § 525, at 695.
1.
In paragraph 14 of their report, the referees found that the Pronschinskes wish to remain on the property and that "partition cannot be had without great prejudice to" them because "their mobile home is located on the property and could only be moved at substantial cost," because "they have invested substantial capital and made improvements to the farm," because "they have taken steps to secure 'organic certification' for the farm," and because "a separate sale of the Bethany Farm would cause substantial hardship to the existing farming operation."
After the district court requested clarification of the referees' finding of "great prejudice" to the Pronschinskes, the referees issued a supplemental report. The referees clarified by stating, "Pursuant to Minn. Stat. § 558.11, ... a partition cannot be had without prejudice to the rights or interests of the Pronschinskes." The referees further stated, "It would be prejudicial if the property was simply divided into three 86.67-acre parcels as suggested by the Plaintiffs." The referees restated the reasons why an equal division in kind would be prejudicial, adding that the Pronschinskes purchased a herd of dairy cattle from Henry and Alice in 2004 and have been operating a dairy farm since then, and that the Neumanns and Anderson do not wish to own the property. The referees also noted that, under the terms of the written lease between the Pronschinskes and the trust, the Pronschinskes would be contractually entitled to reimbursements in excess of those recommended by the referees if the property were sold pursuant to a purchase agreement, which would make a public sale prejudicial to the Neumanns and Anderson as well as to the Pronschinskes. The referees' findings are relevant because they justify a private sale of the property to the Pronschinskes. See Minn. Stat. § 558.14.
In the order that is challenged on appeal, the district court ordered the property to be divided in such a way that each co-tenant would receive 86.666 acres. The district court's order contradicts the referees' finding that an equal division in kind would be prejudicial to all co-tenants. The district court did not explain the discrepancy between its order and the referees' finding of prejudice, except to note, "There was no evidence presented that dividing the property in kind would impair the value of the undivided parcels."
*53 The district court's rejection of the referees' finding of prejudice does not recognize the special deference to which the referees' report is due. The Pronschinskes were not required to introduce evidence to support the referees' findings. A party seeking to set aside a referees' report may find it necessary to introduce evidence to contradict the referees' findings in order to demonstrate that the referees' report is "clearly and palpably against the evidence," that "the preponderance of the evidence ... suggest[s] clearly ... mistake, improper motive, bias, or caprice," or that there are "expressed and articulable reasons [that] support a conclusion that injustice has been done." See Koenig , 308 Minn. at 383-84, 243 N.W.2d at 30-31. But in light of the authorities cited above, a party seeking to confirm a referees' report need not introduce evidence to support or justify the referees' findings. This is so because the referees "are persons who are selected by the parties themselves on account of their superior judgment and capacity to perform this particular service, and they were authorized to act upon a personal view of the property, and upon their individual knowledge of its value, location, etc., which they were left to acquire at their leisure, and from all the best sources of information in their power, and without regard to rules and forms of judicial proceedings in acquiring their knowledge." See Freeman, supra , § 525, at 695.
Thus, the district court did not give proper deference to the referees' finding that an equal division in kind would be prejudicial to all co-tenants.
2.
In paragraph 15 of their report, the referees found that Neumann and Anderson "have both expressed orally and in writing their belief [that] the property should be sold" and that, in light of their desires, "partition can be had with appropriate compensation or owelty." In its interim order, the district court stated that the Neumanns "argue that the ... parcels should be partitioned in kind, with each co-tenant entitled to his or her equal share of the 260 total acres," that the Neumanns "object to what they term a forced 'private sale' of the entire property to the Pronschinskes," and that the Neumanns propose in the alternative "a public sale to the highest bidder with proceeds split equally between the siblings." The district court also stated that Anderson "requests that each sibling receive his or her equal one-third share in the farm's value at a fair price ... or in the alternative that the farm be sold on the public market and proceeds divided by three."
In their supplemental report, the referees reiterated that Neumann and Anderson had "stat[ed] a desire to sell the property." To demonstrate the basis for this statement, the referees attached to their supplemental report a handwritten letter that was signed by Neumann and Anderson in April 2016. The letter states, "Put the farm up on public auction.... No further appraisal needed."
In the order that is challenged on appeal, the district court repeated its statement that the Neumanns "argue that the property should be partitioned in kind, with each co-tenant entitled to his or her equal share of the 260 total acres," and that the Neumanns alternatively propose "a public sale to the highest bidder with proceeds split equally between the siblings." The district court's order accurately reflects the arguments made by the Neumanns' attorney in the memorandum of law supporting their motion to set aside the referees' report. But the arguments of counsel that are made after the referees have issued their report cannot alter the statements that the parties themselves *54 made to the referees before they issued their report. In this particular situation, Neumann's position as of April 2016 was expressed in writing. The referees reasonably relied on Neumann's expressed preference for a public sale, which implies that he does not wish to own the property after a partition. In light of Neumann's expressed preference, the referees reasonably found that the Neumanns would not be prejudiced by a private sale of the property to the Pronschinskes.
The district court also repeated its statement that Anderson "requests that each sibling receive his or her equal one-third share in the farm's value at a fair price ... or in the alternative that the farm be sold on the public market and proceeds divided by three." This statement accurately reflects a letter that Anderson submitted to the district court in January 2017, when the other parties were briefing their cross-motions. Anderson's letter also states, "I am more than happy to sell my share back to [Pronschinske] and be paid in full. I would prefer to keep [Pronschinske] and her family on our family farm." Anderson's letter indicates that the referees' report is more closely aligned with her position than is the district court's order.
Thus, the district court did not give proper deference to the referees' findings concerning the positions of the parties when the referees were conducting their investigation and preparing their report.
3.
A district court may not set aside a referees' report in a partition action unless the report "is based on wrong principles." See Freeman, supra , § 525, at 695. Thus, we proceed to determine whether the referees' report is consistent with Minnesota law.
The district court's order quoted the pertinent language of section 558.11, which provides, "When it appears that partition cannot be made equal between the parties without prejudice to the rights or interests of some, the court may adjudge compensation to be made by one to another for equality of partition...." Minn. Stat. § 558.11. The district court then stated, "However, '[o]welty should be decreed with caution.' " (Quoting Hoerr , 140 Minn. at 226, 165 N.W. at 474.) The district court did not further consider the possibility of an unequal division in kind with owelty. Nothing in the Hoerr opinion forecloses the referees' recommended remedy of a private sale to Pronschinske in exchange for payments to Neumann and Anderson.
The district court also reasoned, "The law favors partition of land in kind, as opposed to partition by sale, as partition in kind does not force a person to sell his or her private property." (Citing Beebout , 447 N.W.2d at 467.) This principle of law is accurately stated, but it applies only to the extent that co-tenants wish to retain their property interests. In this case, Neumann and Anderson had expressed their desires to relinquish their interests in the property. They also had agreed on the value of the property, and Neumann urged the district court to adopt the referees' findings concerning the value of the two parcels. Given the parties' respective positions, the district court could have accommodated all parties' positions by ordering a private sale to the co-tenant who had unequivocally expressed a desire to own the entire property.
The district court further reasoned, "Whatever mode of partition is adopted, it must be capable of execution without advancing the interests of one owner at the expense of the others." (Quoting Swogger , 243 Minn. at 467, 68 N.W.2d at 384.) The district court acknowledged the Pronschinskes' investments in the property and their likely business losses upon an equal *55 division in kind. But the district court stated that the Pronschinskes' "hardship is not such that would require this Court to favor one co-tenant over the other by delivering the entire inheritance to her with the condition that the other co-tenants are forced to sell their shares to her for compensation." The district court added, "The fact that one co-tenant would benefit more than others or would make better use of the property does not rebut the presumption of partition in kind."
This part of the district court's order is inconsistent with the supreme court's opinion in Swogger . Even if one co-tenant would benefit from ownership more than the other tenants, there is no indication in the record that such benefit would come at the expense of the Neumanns or Anderson. Rather, the record indicates that the Pronschinskes would derive more utility from the property than the other tenants because the Pronschinskes have improved the property to suit their organic dairy operation. There is no indication in the record that a public sale would yield a higher price than the value that the referees assigned to the property, a value to which both the Neumanns and Anderson agreed and to which the Neumanns stipulated in district court proceedings. In any event, referees "should, so far as they can do so without injustice to the others, assign each cotenant the part most valuable to him, whether this special value arose from his having made improvements or from any other cause." Freeman, supra , § 522, at 692.
Furthermore, the general thrust of the Swogger opinion is that the law of partition is not limited to the statutory remedies prescribed in chapter 558 but, rather, includes equitable principles, which are flexible enough to accommodate any number of particular circumstances. See Swogger , 243 Minn. at 461-68, 68 N.W.2d at 380-85. The Swogger court stated that a district court's "equitable determinations ... are not restricted to the specific situations and the methods or plans of partition enumerated in the partition act." Id . at 466, 68 N.W.2d at 383. Rather, a district court
may exercise its general equitable powers and resort to the most advantageous plans which the nature of the particular case admits in effecting, without great prejudice to any of the owners, a partition of one or more tracts, whether such partition be accomplished by a division in kind, by sale, or by any practical combination of both methods.
Id . at 466-67, 68 N.W.2d at 383. Consistent with those principles, the Swogger court concluded that the trial court erred by not considering one co-tenant's request for an order setting off one part of the property to him and ordering a public sale of the remainder of the property, with the proceeds to be divided among the remaining four co-tenants. Id. at 468-69, 68 N.W.2d at 384-85. In this case, it is difficult, if not impossible, to conceive of an equal partition in kind that would allow the Pronschinske to continue to operate their dairy farm on 86.666 acres. The referees determined that such a result would be inequitable. Swogger provides a broad legal basis for the referees' recommendation.
Finally, the district court's order for an equal partition in kind conflicts with the referees' specific finding that such a division would be prejudicial to the Pronschinskes. The referees had ample reasons for that finding. As stated in the referees' report and supplemental report, the Pronschinskes have operated a dairy farm on the property since purchasing a herd of dairy cattle from Henry and Alice in 2004, have made significant capital improvements in the property, have taken steps to obtain organic certification for the farm, *56 have an ongoing need to grow grain on the Bethany Farm to ensure the farm's profitability, have established a home on the property, and wish to remain on the property.
Thus, the district court did not have reasons for setting aside the referees' report that would justify a grant of a motion for a new trial. See Robbins , 133 Minn. at 51, 157 N.W. at 909. In addition, the district court erred by ordering a specific partition remedy without remanding the matter to the referees or appointing different referees. See Freeman, supra , § 526, at 696 ("If the Court sets aside the report of the commissioners, it cannot proceed to make a partition, but must refer the partition back to the same commissioners, or appoint others in their stead."). Accordingly, the district court erred by granting the Neumanns' motion to set aside the referees' report and by denying the Pronschinskes' motion to confirm the referees' report.
E.
The Pronschinskes' secondary argument is that the district court erred by not considering equitable principles when conducting its independent analysis of the issues raised by the parties It is unnecessary to consider the Pronschinskes' secondary argument in light of our conclusion that the district court erred by setting aside the referees' report. See supra part D. In essence, we already have resolved the Pronschinskes' secondary argument in our analysis of their primary argument. See supra part D.3. If we were to address the secondary argument in isolation, we would conclude that the district court erred by ordering an equal partition in kind without giving full consideration to all relevant equitable factors, as authorized by Swogger . But we need not reach such a conclusion because we have concluded that the district court erred by setting aside the referees' report.
DECISION
The district court erred by setting aside and not confirming the referees' report. Therefore, we reverse the district court's August 17, 2017 order and remand for the entry of an order adopting the referees' report and for further proceedings consistent with the referees' report.
Reversed and remanded.

See Leutgers v. Kasten , 295 Minn. 545, 546 n.1, 204 N.W.2d 210, 211 n.1 (1973) ; Swogger , 243 Minn. at 462 n.4, 467 n.15, 68 N.W.2d at 381 n.3, 384 n.14 ; Petraborg v. Zontelli , 217 Minn. 536, 540-41, 15 N.W.2d 174, 177 (1944) ; Murray v. Murray , 159 Minn. 111, 114, 198 N.W. 307, 308 (1924) ; Sons v. Sons , 151 Minn. 360, 363, 186 N.W. 811, 812 (1922) ; Hoerr , 140 Minn. at 224, 225, 165 N.W. at 473 ; Robbins , 133 Minn. at 51, 157 N.W. at 909.

A moiety is "half of something (such as an estate)" or a "portion less than half; a small segment." Black's , supra, at 1157.

In their responsive brief, the Neumanns contend that the Pronschinskes' arguments go beyond the proper scope of review by asking this court to consider issues that have not yet been considered by the district court. "Any party to any partition proceedings may appeal from any order or interlocutory judgment made and entered pursuant to section 558.04, 558.07, 558.14, or 558.21." Minn. Stat. § 558.215 (2016). The Neumanns concede that the Pronschinskes' notice of appeal was properly filed because the district court's August 17, 2017 order was filed pursuant to section 558.04. Furthermore, to challenge the district court's rejection of the referees' report, the Pronschinskes were required to appeal from the August 17, 2017 order without waiting for a final order. See Glenwood Investment Props., L.L.C. v. Carroll A. Britton Family Trust , 765 N.W.2d 112, 115-17 (Minn. App. 2009) (concluding that appeal from final partition order did not allow for appellate review of prior order concerning selection of partition remedy). Our analysis of the parties' respective arguments is confined to the issues actually decided by the district court in its August 17, 2017 order.