*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0337**

Laurie J. Akermark (fna: Frost),
Respondent,

vs.

Bradley G. Stoeckel,
Appellant.

**Filed December 11, 2023**
**Affirmed**
**Wheelock, Judge**

Pine County District Court
File No. 58-CV-22-46

Geri C. Sjoquist, Sjoquist Law LLC, St. Paul, Minnesota (for respondent)

Brock P. Alton, Sauro & Bergstrom, PLLC, Oakdale, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Wheelock, Judge; and Smith, John, Judge.[*]

**NONPRECEDENTIAL OPINION**

**WHEELOCK**, Judge

Appellant argues that the district court abused its discretion by not adopting the referee's calculation for dividing equity between the parties in this partition action. We affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

FACTS

On May 19, 2014, appellant Bradley G. Stoeckel and respondent Laurie J. Akermark purchased a single-family home in northern Minnesota (the property) as joint tenants. Both parties' names are on the deed and mortgage. The parties disagree about how much each contributed to the property: Stoeckel claims to have paid over half the value of the home between mortgage payments and improvements to the property; Akermark claims that Stoeckel was never gainfully employed during the five years she lived at the property, so she paid most of the mortgage and bills during that time and thus over half of the total mortgage payments.

The parties' relationship ended in 2019, and Akermark moved to Arizona while Stoeckel continued to reside at the property. Akermark claims that she could not return to the property after the separation because Stoeckel excluded her from the property. In 2022, Akermark brought a partition action against Stoeckel and filed a motion for interlocutory judgment, which the district court granted in part. At the motion hearing, the parties agreed that the district court would appoint a referee to recommend a method to partition the property and divide the equity. The parties also agreed that the district court would expressly retain the authority to "determine how the Net Proceeds shall be allocated and disbursed factoring [in] any equitable adjustments to the Net Proceeds that might be needed."

In December 2022, the referee submitted his report, in which he found that the appraised value of the property was $294,000 and that, after satisfaction of the mortgage and sale costs, the equity to be split between Akermark and Stoeckel would be roughly

$163,000. The referee recommended that Akermark receive $58,360 of the equity based on the referee's calculation, in which he first split the equity evenly and then subtracted half the amount of the mortgage payments Stoeckel made after Akermark moved out in 2019. The referee noted that $58,360 was about the same amount of equity as Akermark would have received if Stoeckel had bought out her interest in 2019. The referee did not make any findings related to exclusion or rents owed, recommending instead that the district court (1) determine these issues after briefing or a hearing, (2) determine the ultimate payoff amount in light of these issues, (3) set a deadline for Stoeckel to buy out Akermark's interest and satisfy the mortgage, and (4) if Stoeckel cannot comply, then authorize the referee to sell the property and distribute the proceeds as determined by the district court.

The district court held a review hearing at which the parties agreed to each submit simultaneous briefs to the court with arguments on the outstanding issues in lieu of a full evidentiary hearing. The parties each provided calculations for dividing the equity based on their claims that they had contributed more than half of the property's value. Stoeckel requested that the district court either adopt the referee-calculated value for the equity or his calculation and argued that he owed no amount for exclusion or rents. Akermark requested that the district court adopt her calculation or that the equity be split evenly, arguing that she should not be required to pay for the three years during which Stoeckel prevented her from enjoying the property.

In March 2023, the district court entered its order adopting the referee's recommendations and dividing the equity evenly between the parties, but it did not subtract

any amount for mortgage payments Stoeckel made after Akermark moved out in 2019. The district court did not explicitly address exclusion or rents in the order and did not expressly state any findings of fact or conclusions of law in its order.

Stoeckel appeals.

## DECISION

Stoeckel challenges the district court's award of half of the property's equity to Akermark, arguing that it should have adopted the referee's calculation of equity owed to Akermark rather than substituting its own calculation.

Partition actions are governed by statute. Any real-property owner may move for partition against co-owners of the same property in order to divide the property "according to the respective rights and interests of the parties." Minn. Stat. § 558.01 (2022). The district court may then order the property to be partitioned and appoint up to three referees to execute the partition. Minn. Stat. § 558.04 (2022). The referee is not required to make and report findings of evidentiary facts. *Robbins v. Hobart*, 157 N.W. 908, 908 (Minn. 1916) (interpreting identical version of Minn. Stat. § 558.04).[1] However, the referee divides the property and allots portions of it to the parties according to their respective rights. Minn. Stat. § 558.06 (2022). The referee must also issue a report that describes the proceedings, including specifying the manner of partition and describing the property and

---

[1] We have previously acknowledged that the "provisions of chapter 558 have changed very little since the 1905 revision of the state's statutes." *Neumann v. Anderson*, 916 N.W.2d 41, 47 (Minn. App. 2018), *rev. denied* (Minn. July 17, 2018).

the share of the property allotted to each party. *Id.* The district court may then "confirm or set aside the report." Minn. Stat. § 558.07 (2022).

A property can be partitioned in any one of six different ways, and the district court determines the best way under the circumstances. *See Neumann*, 916 N.W.2d at 47-48. When deciding a partition action, "a district court may fashion an appropriate remedy based on the circumstances of a particular case by relying on equitable principles." *Id.* at 48; *see Swogger v. Taylor*, 68 N.W.2d 376, 383 (Minn. 1955) (stating that a court's "equitable powers" may be used to achieve the most advantageous partition for the unique circumstances of a case). Because the district court exercised its equitable authority in determining each party's interest in the property's equity here, we "review the district court's ultimate decision to grant equitable relief for [an] abuse of discretion." *Herlache v. Rucks*, 990 N.W.2d 443, 449-50 (Minn. 2023). When reviewing the division of property, we will only conclude that a district court abused its discretion if its determination was "against logic and the facts on the record." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984)).

The district court acted consistently with applicable statutes here by appointing a referee and in determining the division of the property and its equity. The referee filed a report that included all the statutorily required information and provided recommendations for the district court's consideration. The district court called a hearing, pursuant to the referee's recommendation, to determine the remaining issues, including exclusion, rents, and division of equity. After the hearing, the parties submitted briefs on the remaining

issues in lieu of a full evidentiary hearing. The district court then determined that the most equitable relief was an equal division of the equity in the property.

Stoeckel argues that the district court should have given greater deference to the referee's report, citing *Neumann*. But we are not persuaded. In *Neumann*, the parties sought partition and the district court appointed referees who recommended a form of partition that would not cause "great prejudice" to the party still living on the property. 916 N.W.2d at 45. The district court set aside the recommendation, and we reversed, holding that "the district court is required to give considerable deference to the [referees'] report." *Id.* at 49.

*Neumann* is distinguishable from this case. Here, the district court followed all of the referee's recommendations, including that the district court (1) hear or review arguments regarding exclusion and rent and (2) determine the division of equity in light of these arguments. The district court also considered the parties' briefs on these issues before it divided the equity. Unlike in *Neumann*, the district court here did not set aside the referee's report; it followed the referee's recommendations for continued fact-finding. Because the district court followed the requirements set forth in statutes and the recommendations of the referee and properly exercised its equitable authority, there was no abuse of discretion related to the district court's actions after the referee submitted his report.[2]

---

[2] The parties' briefs to this court make references to various stipulations that may or may not have been made in the district court proceedings; however, neither party addressed whether parties can use stipulations to limit statutory provisions or the district court's

6

The only remaining issue then is whether the district court clearly erred when calculating the amount of equity owed to each party. Clear error exists when the court's findings "are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted). "We will not conclude that a factfinder clearly erred unless, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted). Findings of fact allow this court to determine the basis for the district court's ruling. *Transit Team, Inc. v. Metro. Council*, 679 N.W.2d 390, 398 (Minn. App. 2004). Here, the district court did not make any formal findings of fact, so they must be inferred. If we can infer the findings from the district court's conclusions, then we can complete our review without remanding the case for explicit findings. *Welch v. Comm'r of Pub. Safety*, 545 N.W.2d 692, 694 (Minn. App. 1996). Findings can be inferred when the district court's conclusions are consistent with the record, and the record reveals the factual basis supporting the conclusions with sufficient clarity. *Podany v. Podany*, 267 N.W.2d 500, 502-03 (Minn. 1978) (affirming a district court's nearly even division of property in a marital dissolution); *Minn. Best Maid Cookie Co. v. Flour Pot Cookie Co.*, 412 N.W.2d 380, 384-85 (Minn. App. 1987) (affirming a district court's order that did not include findings of fact because the record as a whole supported the conclusion).

---

authority. Inadequately briefed issues are deemed waived. *State Dep't of Labor & Indus. by the Special Comp. Fund v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997). Thus, we decline to consider this issue.

The district court considered evidence submitted by both parties and the referee's report, and its conclusions are consistent with the evidence presented. According to Akermark's brief, she contributed approximately 56% of all the mortgage payments and was owed rents or other payments because Stoeckel excluded her from the property for three years. However, the referee's calculation awarded less than 50% of the equity to Akermark. Between these two numbers, there is support for the district court's even division of the equity between the parties. Because the record includes evidence consistent with the district court's conclusions, the award was not clearly erroneous.

Finally, Stoeckel argues that we need not review the district court's determination that Akermark was not owed any equity for rents or exclusion. However, it appears that the district court granted Akermark some equity based on these issues because it increased Akermark's equity award from the referee's initial calculation and the referee did not factor in exclusion or rents. Regardless, because Stoeckel does not argue that the district court erred in this respect, we do not review the district court's findings on this issue.

In sum, we conclude that the district court did not abuse its discretion when it conducted a review of specific issues pursuant to the referee's recommendation and did not err when it divided the equity evenly between the parties.

**Affirmed.**